Calvin TURNER, Joseph Turner, James T. Bates, Moses King, Robert L. Billingsley, Collins King, Albert L. King, Evans H. Harris, J. W. Combs, and Frank Bates, Minor, by Mrs. Mary Bates, his mother and next friend, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Kenneth E. GOOLSBY, individually, and as Solicitor General, Toombs Judicial Circuit, Milton B. Moore, Individually, and as Sheriff and Custodian of the Common Jail of Taliaferro County, Georgia, Harold F. Richards, Individually, and as Attorney for Taliaferro County, Georgia, Lola Williams, individually, and as Superintendent of Schools of the Taliaferro County School System, H. E. Williams, Jr., Mrs. Willie Mae Fambrough, Carl Chapman, and J. M. Taylor, individually, and as Members of the Board of Education of Taliaferro County, Georgia, and the Board of Education of Taliaferro County, their agents, servants, employees, successors, representatives, and all persons in active concert and participation with them, Defendants.

Civ. A. No. 1223.

United States District Court
S. D. Georgia
Augusta Division.

Oct. 22, 1965.
Supplemental Opinion May 20, 1966.

E. Freeman Leverett, Deputy Asst. Atty. Gen., Elberton, Ga.; E. Lloyd Lewis, Greensboro, Ga.; Walton Harden and Wilbur A. Orr, Washington, Ga.; Charles L. Bloch, Macon, Ga.; Kenneth E. Goolsby, Sol. Gen., Thomson, Ga.; E. Purnell Davis, Warrenton, Ga., for defendants.

Jack Greenberg, Derrick Bell, Howard Moore and Donald Hollowell, for plaintiffs.

Arthur K. Bolton, Atty. Gen. for Georgia and Alfred L. Evans, Jr., Asst. Atty. Gen., Atlanta, Ga., for receivers.

## OPINION

Before BELL, Circuit Judge, and SCARLETT and MORGAN, District Judges.

PER CURIAM:

Plaintiffs, Negro citizens of Taliaferro County, Georgia, brought an action, as amended, against defendants in four counts. In Count One they contend that Georgia Code § 26–6901 is unconstitutional and seek to restrain its enforcement. That statute provides generally that any person disturbing religious worship shall be guilty of a misdemeanor. In Count Two they contend that Georgia Code § 26–3914, the Georgia forgery statute, is also unconstitutional and seek to restrain its enforcement. Count Three alleges that the defendants have conspired

to deny plaintiffs and the class they represent their civil rights, and several overt acts pursuant to the conspiracy are set out. Count Four was added by amendment. It seeks the desegregation of the public school system of Taliaferro County, Georgia.

A three judge district court was convened in light of the claims of Count One and Two, and the cause came on for hearing on the question of temporary injunctive relief. The Court declined to hear evidence relating to Count Two of the complaint for the reason that the rights of only one person are involved and the relief sought does not relate to the civil rights of the class. The essence of the complaint is to secure relief relative to the civil rights of Negro citizens in Taliaferro County as a class. No evidence was adduced on Count Four and the Court is of the opinion that the desegregation of the public school system other than in the degree hereinafter discussed is a matter over which the Department of Health, Education and Welfare of the Executive Department of the federal government has already assumed jurisdiction. It appears without dispute that the school board of Taliaferro County has submitted a plan of desegregation to that department. Thus, the Court confined the hearing on the motion for interlocutory injunction to Counts One and Three insofar as the relief sought by plaintiffs is concerned.

The defendants filed a counterclaim against plaintiffs and the class they represent seeking injunctive relief against various activities of plaintiffs and their class including those which allegedly disturbed Murden School, the Negro school of Taliaferro County and the students therein while school was in session, and also those which interfered with school buses being used to transport white students to the schools of several surrounding counties.

## COUNT ONE

█ The defendants contend at the outset that Code Section 26–6901 is not unconstitutional on its face and that no question is therefore presented for a three judge district court. The rule is that the statute must be sufficiently clear to furnish a guide to anyone who proposes to act in light of the statute. Cf. Baggett v. Bullitt, 1964, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377; and Thornhill v. State of Alabama, 1940, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. At first blush the language of this statute seems clear. It operates against any person who by cursing or using obscene or profane language or by otherwise indecently acting interrupts or disturbs a congregation of persons lawfully assembled for divine service.[1] The facts of this case may be used as a hypothesis to test the clarity of this statute, and when so used it appears that whether or not the statute is unconstitutionally vague presents a substantial question. This is particularly so where First Amendment rights, as is the case, are involved.

█ The facts are that plaintiffs and their class marched in double file from the Friendship Baptist Church in Crawfordville, Taliaferro County, Georgia, on August 22, 1965, and took their place together, there being about 125 of them, on the courthouse lawn. They there sang "God Bless America", were led in prayer by one of their number, and then another one of their number made a statement. They thereupon marched in double file back to the church. At the time of their assembly on the courthouse lawn it appears that a retired or itinerant minister by the name of Reverend Whitney Ward was occupying another position on an adjacent quarter of the courthouse square

---

1. Code Section 26–6901.
 "Any person who shall, by cursing or using profane or obscene language, or by being intoxicated, or otherwise indecently acting, interrupt, or in any manner disturb, a congregation of persons lawfully assembled for divine service, and until they are dispersed from such place of worship, shall be guilty of a misdemeanor. (Cobb, 851. Acts 1851-2, p. 270; 1865-6, p. 233; 1858, p. 100; 1859, p. 62.)"

where he was engaged in playing phonograph records, thought by some to have been religious in nature, over a loud speaker. There was also some testimony that he had a Bible in his hand and perhaps read from the Bible. The estimates placed the number of people assembled on the steps of the courthouse, on the adjacent sidewalks, on the lawn, and on automobile fenders along the street together at no more than fifteen persons. This was the congregation purportedly to have been lawfully assembled for divine service.

This assembly of plaintiffs and their group set off a chain of events resulting in a flagrant unconstitutional application of the statute proscribing the disturbance of divine worship. The grand jury of Taliaferro County met and indicted nine members of the group of Negroes for violating the statute. They were arrested, incarcerated, some over night, and are presently at liberty on bonds of $750.00.

The Reverend Ward was present in the courtroom during the three-day hearing on the motion for temporary relief, but failed to take the stand to contradict or amplify the above-stated facts and circumstances. A deputy sheriff who is also chairman of the Board of County Commissioners of Taliaferro County and the son-in-law of Sheriff Moore, one of the defendants, testified on behalf of defendants as to the circumstances surrounding the alleged disturbance of divine worship. However, his testimony did not seriously contradict what we have above recited.

We need not now decide whether this Georgia statute is unconstitutional on its face. It is enough in granting interlocutory relief to hold that a substantial question is presented, and to reserve the question for final hearing. It was unconstitutionally applied and such application will be considered by way of relief.

## COUNT THREE

This count presents a question ancillary to those set out in Counts One and Two which are subject to three-judge action. The Court in its discretion, having assumed jurisdiction on the basis of Count One, determined to consider and grant relief, if indicated, on the cause or causes of action set out in Count Three, the conspiracy count. The plaintiffs contended that the defendants, acting in concert, unlawfully combined and conspired to deprive them of their federal civil rights.

One of the defendants is the solicitor general of the Toombs Judicial Circuit and he resides in McDuffie County. All the other defendants reside in Taliaferro County. One, as stated, is sheriff; another, Harold F. Richards, is county attorney and also attorney for the school board. The superintendent of schools is a defendant as are the members of the school board.

There are only two schools in the county; Murden which is populated by Negroes, and Alexander Stephens Institute which was populated by whites during the last school term. It appears without dispute that Alexander Stephens Institute has been closed since the beginning of this school term on or about September 1st, and that all white children in Taliaferro County are attending school in adjoining counties with most being transported on Taliaferro County school buses. The role that the school superintendent and the school board are alleged to have played in the conspiracy is to have secretly and covertly arranged for all the white children to leave the county for school in other counties so as to eliminate the only white school available to 87 Negro children who sought transfers to a desegregated school. The transfers were sought pursuant to a plan of desegregation filed with the Health, Education and Welfare Department. The transfer applications of these Negro students had never, up until the time of hearing, been considered by the superintendent and the school board. Instead, the school superintendent concluded that some of the applications for transfer were not bona fide and thereupon called upon the school board attorney, defend-

ant Richards, to conduct an investigation as to whether some of the applications were forged.

The conduct of the investigation by Mr. Richards must be considered in the light of the fact that he is the same Mr. Richards who called on Defendant Goolsby, the solicitor general, for a legal opinion as to whether the Negro citizens, referred to in the discussion of Count One, supra, could be indicted for disturbing divine worship. He furnished evidence in the form of a statement by the Reverend Whitney Ward to the solicitor as a basis for the opinion.

At any rate, Mr. Richards took over the investigation from this point forward. And it must be noted in considering this phase of the case that the form of application for transfer was illegal in the light of several opinions of this court that notarization of the signature of the applicant or of the parents or guardian may not be required. See Stell v. Savannah-Chatham County Board of Education, 5 Cir., 1964, 333 F.2d 55; Lockett v. Board of Education of Muscogee County, 5 Cir., 1965, 342 F.2d 225; and Bivins v. Board of Public Education and Orphanage for Bibb County, 5 Cir., 1965, 342 F.2d 229, among others.

Defendant Richards obtained what he considered to be sufficient evidence to have Plaintiff Calvin Turner, a former teacher in the Negro school of Taliaferro County, indicted for forgery. We view that evidence with considerable scepticism in the light of the illegal transfer applications and other evidence submitted at the hearing. Calvin Turner was indicted for forging three transfer applications. The indictment consisted of twelve counts, and his bond was set at $1,250.00 on each count by the Judge of the Superior Court of the Toombs Judicial Circuit, making a total, including the $750.00 on the indictment for disturbing divine worship, of $17,750.00. Calvin Turner was then taken from the Taliaferro County jail and placed in the Wilkes County jail for safekeeping. After suit was filed, Sheriff Moore, at the request of this Court, reduced the bond to $2,500.00 and Calvin Turner was released.

There was some evidence that the unrest on the part of the Negro plaintiffs stemmed in part from the fact that the superintendent of schools refused their request for a gymnasium or for use of the only school gymnasium in the county which was assigned to the white school. There was some evidence relating to the refusal to rehire several Negro school teachers but this was not developed to the point of showing that this resulted from the alleged conspiracy.

The proof was clear that the school superintendent with at least the knowledge, if not the help, of the school board knew at least by the latter part of July that the white school in Taliaferro County would be closed. At the time she had knowledge of the transfer applications of the Negro students. There were normally less than 800 children in the Taliaferro County school system. Almost 600 of these were Negro. A few less than 200 were whites. There were 120 whites in the elementary school during the last school term and 74 in grades eight through twelve. One hundred and twelve of the white children are now attending the Warren County schools, 36 are attending the Wilkes County schools, 26 in Green County, and one in Oglethorpe County. In addition, it appears the 27 Negro children in Taliaferro County are attending school in Wilkes County. They may or may not be receiving public transportation, but it is clear that the whites are being transported on Taliaferro County school buses.

The Negroes were not advised that the white school would be closed and it appeared that the decision, if not kept secret, was at least not publicized. The superintendent arranged during the month of August for her own son to transfer to the Green County schools. Warren County employed four of the nine white teachers of Taliaferro County on August 5th, and it appeared that negotiations for employment had commenced some days or even weeks prior thereto. The superintendent testified

that the decision to transfer to an adjoining county was up to the parents of each child, and that she finally determined that only some fifty white children had not transferred. The decision was then made to discontinue operations at the Alexander Stephens Institute. This necessitated the transfer of these remaining fifty children to adjoining counties. Also, it is clear that the adjoining counties took the Taliaferro County children on the basis of not having to furnish transportation for them. The superintendent and the school board solved this problem by furnishing the needed transportation.

The evidence demonstrated that approximately $34,900.00 per annum is being spent for school bus transportation in the county, and that, of this, all except some $1,200.00 is being paid by the State of Georgia. The Taliaferro County school system is receiving local support in the amount of approximately $38,000.00, federal support in the amount of approximately $3,000.00, and state support, including a contribution on the superintendent's salary in the amount of $6,900.00, in the total amount of approximately $180,000.00. The testimony was that these sums are still being paid to Taliaferro County Board of Education although the Alexander Stephens Institute is no longer in operation. The state expects to recoup by a mid-year adjustment and charge back except for the transportation cost which is viewed as being legitimately expended.

The superintendents of the Green and Warren County school systems testified and stated that they would be unable, because of crowded school conditions, to take any of the 87 Negro children who applied for transfer to the Taliaferro County white school. The defendants were asked daily during the hearing to come up with a plan to accord these Negro children their constitutional right

to attend a desegregated school under the plan as submitted by Taliaferro County to the Health, Education and Welfare Department but no suggested plan was forthcoming. This left the problem in the hands of the Court with the only clear remedy being to enjoin the expenditure of any public funds for transporting the white children to adjoining counties and to enjoin the payment of funds by the state to the adjoining counties to cover the cost of teaching the Taliaferro County children in those systems. This would result in irreparable damage to the white children with no resulting benefits to the Negro applicants for transfer.

### COUNTERCLAIM

It appeared without dispute that plaintiffs and the class they represent have attempted to block the school buses transporting the white children to the adjoining counties and to board the buses. It also appeared without dispute that on three occasions persons of the class represented by plaintiffs invaded the Negro school and interrupted the teaching process through their actions while there. On at least one occasion photographers and television cameramen set up at the Negro school during the class periods prior to the arrival of the demonstrators.

This activity is causing irreparable damage to those Negro children still attending the Murden school. The average daily attendance at that school is now only 200, while some 300 Negro children are attending a freedom school operated by plaintiffs. Ordinarily, action to prevent disorder of this kind is left to state and local government[2] but a federal court may assume jurisdiction by way of a counterclaim under the circumstances of this case. Plaintiffs are seeking relief in the same subject matter and complete relief cannot be afforded

2. See Georgia Code Section 26–6913:
"Any person who shall wilfully interrupt or disturb any public school, private school, or Sunday school, or any assemblage or meeting of any such school, lawfully and peacefully held for the pur-

pose of scientific, literary, social, or religious improvement, either within or without the place where such school is usually held, shall be guilty of a misdemeanor. (Acts 1880–1, p. 144.)"

in the premises unless these hindrances to the educational process are removed. See Kelly v. Page, 5 Cir., 1964, 335 F.2d 114, on the question of jurisdiction.

## CONCLUSION

 It is the opinion of the Court that the 87 Negro children on the list attached hereto as Appendix One are entitled to attend a desegregated school on the basis of the plan submitted by the Taliaferro County school board to the Health, Education and Welfare Department having so contemplated. Their transfer applications were not contested by defendants on the hearing even though contest was invited. They must now be accorded their rights. There is no white school in Taliaferro County and their rights may be accorded by reopening the white school or by arranging for them to attend school with the Taliaferro County white children in the schools of the adjoining counties which the white children are attending. The expenditures of public funds for the cost of educating these white children, including tuition, library funds, books and the like, and also for transportation is illegal so long as these 87 Negro applicants for transfer are denied their right to transfer. The school superintendent was unable to offer any help to the Court toward the solution of this problem. The Court is therefore faced with a situation where rights are being denied, public funds are being illegally expended, and the school superintendent and school board are taking no action to stop the illegal expenditures or to accord the rights in question. In order to avoid irreparable injury to the white children which would result from enjoining the use of public funds for their education, and to preserve the rights of 87 Negro applicants for transfer, the Court has concluded that in the exercise of its equity power it will be necessary to place the school system of Taliaferro County in receivership. An order to this end will be prepared and the superintendent of schools for the State of Georgia will be appointed receiver with instructions to submit a plan to the Court by October 25, 1965, whereunder the illegal expenditure of funds will be discontinued and the right of the 87 applicants for transfer will be accorded.

The Court has also concluded that the activities of defendants Moore, Richards, ando Goolsby relating to the spurious indictments for disturbing worship cannot be countenanced and that prosecutions thereunder must be enjoined. Accordingly, an order will be entered enjoining the prosecution of Calvin Turner, Joseph Turner, James T. Bates, Moses King, Robert L. Billingsley, Collins King, Albert L. King, Evans H. Harris, J. W. Combs, and Frank Bates under these indictments. The prosecution of Calvin Turner on the forgery charge will also be enjoined pending final disposition of this matter in view of the fact that he is due to be tried during the court term commencing October 18, 1965, and the doubt raised as to the reason for his indictment. The trial of Edna Swain on an indictment for perjury, which perjury charge apparently arose out of the investigation of Calvin Turner on the forgery charge, will also be enjoined.

In addition, the defendants will be enjoined from interfering with the civil rights of plaintiffs and the class they represent to the extent that those rights will not exceed what is permitted under the balance between their rights and the rights of other citizens of Taliaferro County, which balance must be maintained under the Constitution. An order to that end will be entered.

Lastly, the conduct of plaintiffs and the class they represent with respect to interfering with school buses and with respect to disturbing schools in Taliaferro County will be enjoined. Counsel for plaintiffs assured the Court that plaintiffs are in position of leadership in the civil rights movement in Taliaferro County and are in position to obey and to see that an injunction to this effect is obeyed.

The Court retains jurisdiction to enter such other and further orders as may be appropriate to carry out the intention of

this opinion. All pending motions are carried with the case including the motions of the school boards of Warren, Green, and Wilkes Counties.

This opinion will serve as findings and conclusions required by Rule 52(a), Federal Rules of Civil Procedure.

### Supplemental Opinion

The prior opinion of this court in this matter was entered on October 22, 1965. It was supplemented by orders enjoining stated conduct of plaintiffs and certain of the defendants, and appointing the State School Superintendent of Georgia as Receiver of the Taliaferro County Board of Education and its properties. The Receiver was directed to submit a plan whereby the constitutional rights of eighty seven Taliaferro County Negro children who had been denied the right to attend the white school of that county by reason of their race would be accorded them. The plan was submitted and modified by the court. It was made effective by an order of the court dated October 22, 1965. The school boards and school superintendents of Taliaferro, Wilkes, Warren and Greene Counties were enjoined by that order from interfering with the plan. The plan gave these Negro children a choice of attending the white schools of Wilkes, Warren and Greene Counties then being attended by the white children of Taliaferro County. The report of the Receiver on the implementation of the plan was submitted on November 22, 1965.

The case came on for further hearing on February 23, 1966. The motions of the Wilkes County Board of Education and the Wilkes County Superintendent of Schools to sever Counts III and IV of the complaint from Counts I and II, and for Counts III and IV to be handled by a district court consisting of a single judge were considered, as was their motion to dismiss the amendment making them parties for failure to state a claim upon which relief could be granted. The court also considered the motions of the same parties to vacate the order of the court dated October 22, 1965 which en-

joined them in that the same was entered prior to service upon them, and to dismiss and strike Counts I and II in that these counts related wholly to matters concerning Taliaferro County, and to dismiss Count III on the ground that it contained a multiplicity of actions. The motion of Warren County to relegate Counts III and IV of the complaint to a district court consisting of one judge was heard at the same time. After argument and post-hearing briefs, each of these motions is denied.

The court has previously made it clear that relief was being granted only upon Counts I and III. No relief has been granted as to Count IV. The Boards of Education and School Superintendents of Wilkes, Warren, and Greene Counties were named as parties defendants and enjoined only to make the order of the court effective insofar as it concerned enrolling those Negro children of Taliaferro County in the schools of Wilkes, Warren and Greene Counties, who had previously applied to attend the white school of Taliaferro County. The white school had been closed through the medium of transferring all white students in Taliaferro County to schools of Warren, Wilkes, and Greene Counties.

With respect of the contention that the court lacks power as a three judge district court to adjudicate the contentions of Count III, we are of the opinion that Counts I, II and III are so interrelated as to present one continuous transaction or set of operative facts, to-wit: an effort to avoid desegregating the school system of Taliaferro County. This being so, and the court having jurisdiction of Counts I and II, the court as a matter of discretion had already determined that it had power to grant the relief heretofore granted on that portion of Count III which relates to the deprivation of the constitutional rights of the Negro children of Taliaferro County. The adjoining counties of Wilkes, Warren and Greene may not complain of doing for the Taliaferro County Negro children what was voluntarily done for the Taliaferro County white children. In

any event the attendance question is also a part of the one continuous transaction of avoiding the desegregation of the Taliaferro County school system. Counsel for Wilkes County state the rule as follows:

"* * * judicial power of a three judge court exists whenever there is a claim arising under the statutes creating three judge courts, and the relationship between that claim and non-three judge court claims asserted in the complaint permits the conclusion that the entire action before the court comprises but one case of which the statutory court can be said to have jurisdiction." (Supp. brief)

■ This is said to be the holding of United Mine Workers of America v. Gibbs, 1966, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218. That decision dealt with the question of pendent jurisdiction but its reasoning is analogous on the question here asserted. The extra claim there was based on state law. Here it stems from the federal Constitution. Whether the three judge court should handle this extra claim although not of three judge scope is discretionary. A good test of that discretion should certainly be no more than the test used in determining pendent jurisdiction but the pendent jurisdiction test is met in every particular here.

Counts I, II and that portion of III on which relief has been granted comprise but one case or set of operative facts. The arrests for disturbing divine worship in Count I were related to the efforts to desegregate the school system. The arrests for forgery and for perjury in Count II related to desegregating the school system. The conspiracy charged in Count III related to desegregating the school system and, as stated, the adjoining counties are held only to the extent of making it possible to carry out the order of the court that the Negro children who had applied to attend the white schools in Taliaferro County may attend the schools in the adjoining counties which are and were being attended by the white children of Taliaferro County.

The order as to Wilkes County Board of Education and its Superintendent will be made effective only from and after February 23, 1966 in view of the absence of service until after our order of October 22, 1965, and the absence also of a hearing for these defendants until February 23, 1966.

Counsel for the plaintiffs may prepare and submit orders overruling the several motions of the defendant school boards and school superintendents of Wilkes and Warren Counties, and also an order effective as to the Wilkes County defendants from and after February 23, 1966.

■ We likewise considered the motion of the United States to intervene in the pending litigation under § 902 of the Civil Rights Act of 1964. 42 U.S. C.A. § 2000h–2; Lemon v. Bossier Parish School Board, W.D., La., 1965, 240 F. Supp. 709. The court announced at the hearing that the United States would be allowed to intervene to the extent of the matters under consideration and on which relief had been granted. These matters involved only Counts I and III. The court granted relief as to the matters set out in Count II under its consideration of Count III in that it enjoined the prosecutions which were the subject matter of Count II. The court refused to consider Count IV which had been added by amendment. Count IV involved only a classic school desegregation complaint directed to desegregating the Taliaferro County school system. This was a matter for a one judge district court and, moreover, we declined to grant relief under Count IV for the reason that the Department of Health, Education, and Welfare already had the matter of desegregating the Taliaferro school system under consideration.

The court is still of the opinion that the litigation should not be expanded at the instance of a late comer such as the United States is in this instance. The matter had been tried extensively, relief had been granted to the end of appointing a Receiver to place the Negro children in a like position to that of the white

children, and the plan carried out, all prior to hearing from the United States.

Accordingly, it will be in order for counsel for the United States to present an order allowing the intervention to the extent noted.

The Receiver seeks to be dismissed and to have the school system of Taliaferro County and its properties revert to the Taliaferro County school board and the superintendent of Taliaferro County schools. The Receiver has carried out the order of the court in a commendable manner. All of the Negro children whose rights were denied are now attending the white schools of the adjoining counties along with the white children of Taliaferro County. They ride the same school buses and all of the facilities of the schools in the adjoining counties attended by them are desegregated. At the February 23 hearing the Receiver was directed to determine whether segregation practices were in force within the schools of Warren and Wilkes Counties attended by Negro children of Taliaferro County. Plaintiffs and the United States had alleged such conditions existed and they offered some evidence to this effect at the hearing. There was no complaint against Greene County. The Receiver is now satisfied from investigation and inspection that no such practices are now in force.

The Receiver was directed to determine why the Negro children of Taliaferro County were not accorded their first choice selection of schools by county upon their application to transfer to the schools of the adjoining counties. It was determined that some were sent to counties other than counties of their choice in the interest of transportation efficiency and that the arrangement was worked out with counsel for plaintiffs. This was not a major matter, as we shall see, in view of the fact that none of these three adjoining county systems will take children from Taliaferro County for the 1966-67 school year. It is enough to say that the Receiver, pursuant to the order of the court, has secured the rights of the Negro children of Taliaferro County for the school year 1965-66 insofar as it was possible for him to do so without additional funds.

It became apparent at the February 23 hearing while some of the Negro children who are attending school in the adjoining counties were testifying that they were making failing grades. The Receiver was instructed to determine whether remedial instruction was needed for the Negro children of Taliaferro County, and the possibility of such remedial instruction if needed.

Such a study has now been made and the report of the Receiver includes an exhibit which reflects all grades of every child from Taliaferro County attending school in Wilkes, Warren or Greene Counties. It appears that 229 children are so attending including 180 whites and 49 Negroes. A summary attached to the report indicates that 84.4% grades made by the Negro children and 22.5% of the grades made by the white children from Taliaferro County were below the passing grade of 70. With respect to grades 1 through 8, 64% of the grades made by Negro children and 9.1% of the grades made by white children were below the passing grade of 70.

It is apparent that there is a dire need for remedial training for all of the Taliaferro County school children but the need is even more imperative for the Negro children. The Receiver reports that the state has no funds for remedial training and that the Department of Health, Education and Welfare has refused to advance the funds which would normally be allocated to Taliaferro County. The plan prepared by the Taliaferro County Board of Education was not accepted by the Department of Health, Education and Welfare but the order of the court granting the relief heretofore discussed was forwarded by the Receiver to the United States Office of Education on November 8, 1965 with the request that it be accepted as a plan. No response has been received to date to this letter. The funds are still being withheld. The Receiver's report shows that certain members of the United States Office of Education in-

dicated that the funds would be withheld pending receipt of the consent of the Department of Justice.

This is a small school system in a place far remote from Washington and the court does not know why these funds have been withheld from the court appointed Receiver. The court does know that the funds are sorely needed for the improvement of educational opportunities of the children in the Taliaferro County school system. It happens that presently they are all Negro children but the need for remedial training exists nevertheless. The Receiver also reports that there are no federal or state funds available for remedial training in the predominantly white schools in Warren, Wilkes and Greene Counties being attended by the Taliaferro children. Thus these children, although in many instances far behind in school, are likewise being denied remedial training. The court, not being equipped to run schools, appointed the state school superintendent as Receiver to operate the schools of Taliaferro County but even this high education official has been unable to obtain the share of the federal funds which are due this school system. As the matter stands, only the children are being harmed by the lack of these funds, but they are being irreparably harmed.

The Receiver has reported that the school systems of Wilkes, Warren and Greene Counties will take no children from Taliaferro County, white or Negro, for the school term 1966–67. This makes it necessary for the Taliaferro County Board of Education to resume the operation of a complete school system for 1966–67. The Board adopted the following resolution on April 15, 1966 after receiving advice from the State Department of Education:

"After due and careful consideration of the statement the Board unanimously approved the following:

"1. Operate one high school and one elementary school.

"2. The present Alexander Stephens School be designated as the ASI Elementary School and the present Murden School be designated as the ASI High School.

"3. Mr. J. H. Cammon to advise Mrs. Williams, Supt. on curriculum development to meet the needs of Taliaferro County students.

"4. The Board instructed Mrs. Williams to proceed in development of policies for the operation of the two schools for their consideration."

The court is of the opinion that the Receiver has done all that he can possibly do toward carrying out the order of the court. Such educational opportunities as will be afforded the children of the Taliaferro system in the future must come from the local level with the help of state funds and the federal funds which were appropriated to improve educational opportunities of children everywhere.

It is the opinion of the court that the Receiver should be discharged and the Taliaferro County school system returned to the local authority for the resumption of local operation and so that necessary plans for operating the school system in 1966–67 may be made.

It is noted that under the resolution the dual school system has been abolished for 1966–67. There are only two schools in the county, Murden, now all Negro, and Alexander Stephens Institute, formerly all white but now closed. The one gymnasium in the county was formerly assigned to Alexander Stephens Institute but by court order was assigned to Murden in October, 1965. Under the resolution the name of Murden school will be changed to Alexander Stephens Institute high school and the present Alexander Stephens Institute will be designated as Alexander Stephens Institute elementary school. Any further planning may be worked out with the Department of Health, Education and Welfare with the help of the state Department of Education. The responsibility for affording full opportunities in education to the Taliaferro County children rests squarely on the shoulders of these local officials

with such help as may be forthcoming from the state and federal levels of government.

Counsel for the Receiver may present an order discharging the Receiver and restoring the property, duties and functions of the Taliaferro County Board of Education to the members of the Board of Education and the county school superintendent.

The court will retain jurisdiction for such other and further orders as may be necessary in the premises.