Robert Anthony REED et al., Plaintiffs,

v.

James A. RHODES et al., Defendants.

No. C73–1300.

United States District Court,
N. D. Ohio, E. D.

May 15, 1979.

James L. Hardiman, Theresa Demchak, Cleveland, Ohio, Nathaniel R. Jones, New York City, Thomas I. Atkins, Roxbury, Mass., for plaintiffs.

Jeremiah Glassman, Michael Sussman, Dept. of Justice, Washington, D.C., for amicus curiae, United States of America.

Mark O'Neill, Weston, Hurd, Fallon, Paisley & Howley, George I. Meisel, James P. Murphy, Squire, Sanders & Dempsey, John H. Bustamante, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, Chief Judge.

The Court has become painfully aware that the local defendants' planning activities have not been effective. Last fall, this Court noted, but overlooked, the scattered and inconsistent planning, which resulted in presenting a plan to the Court which was hurriedly revoked as the school term approached. The Court, at that time, was forced into the position of having to accept a hastily drawn school closing plan which, if the defendants had allowed sufficient time, the Court may have rejected. However, the Court was engineered into a position of either approving their ill-prepared school closing plan or ordering the schools to remain closed until proper planning had been undertaken. The Court was disappointed at the procedures and tactics employed by the local defendants, but did not want to disrupt the expectations of the parents and children that school would open on a timely basis after the teachers' strike.

The local defendants' failure to plan properly was again evident this February. On January 24, 1979, the Cleveland School Board approved various plans which they later disapproved on February 8, 1979. Their planning was so deficient that the Deputy Superintendent for Desegregation Implementation had not considered either

the legality of their plans[1] or their cost.[2] Therefore, after filing their plans with the Court, they partially rescinded their plans even though it was within a few short weeks of the opening of school. Dr. Fleming has acknowledged that the vacillation of the Board's planning has "discouraged" many parents.[3] Dr. Fleming has also acknowledged that the local defendants' failure to prepare expeditiously and thoughtfully for desegregation has limited their ability to do as much desegregation as perhaps they could.[4]

The local defendants' inability to carry out desegregation pervades the school system. School principals and administrators are not properly prepared for desegregation.[5] The school system's records on student, faculty, staff and inventory are incomplete and provide an obstacle to effective desegregation. In all, the local defendants' meager attempt at desegregation in February, 1979 was so disruptive that this Court has serious doubt whether the ultimate implementation, which is of much greater magnitude, can be carried out smoothly and effectively.

The local defendants have also shown a complete inability to regard the various aspects of desegregation planning as interrelated components. The February 6, 1978 order could be strengthened and requires further planning. This Court has instructed the parties on several occasions, including in the February 6, 1978 order itself, to suggest a creative modification of the remedial plan which best incorporates the Kennedy and Marshall school areas, which fully takes into account all schools projected for closing in the next few years,[6] and which contains a variety of magnet programs.

Each of these items separately affects the distribution and assignment of students. If considered separately, a change in any one item will affect the February 6 plan as well as the other items. Therefore, they cannot be treated separately but must be carefully and prospectively incorporated into an overall plan for the Cleveland public schools. To plan in a piecemeal fashion is absurd and will continue to disrupt the expectations of parents who want to know where their child will be taught the following semester. This Court wants to minimize as much as possible the dislocations attendant to any desegregation effort. Therefore, foresighted and comprehensive planning is required.[7]

The local defendants have failed to heed the recommendations of this Court that the local school administration needs the guidance of outside expertise to formulate a workable plan. In fact, they have ignored a direct order of this Court that "the defendants shall consult with experts drawn from outside the Cleveland school system, such consultants to be selected with the approval of the Court." February 6, 1978 order, p. 79. The local defendants' floundering efforts this 1978–79 school year has shown that such outside expertise is desperately needed.

As a result of this Court's analysis of the management capability of the local defendants (see pp. 95–98 of February 6, 1978 order), a deputy superintendent for desegregation implementation was hired. An individual who had considerable experience in other school systems undergoing desegregation was chosen. Regrettably, this individual decided to leave the Cleveland system.

1. February 16, 1979 hearing, Dr. Fleming testimony, p. 124.

2. February 16, 1979 hearing, Dr. Fleming testimony, p. 136.

3. Fleming Deposition, February 13, 1979, p. 110.

4. Id., p. 37.

5. The situation that developed at Westropp Junior High School is evidence of this fact.

6. September 30, 1977, December 3, 1977, January 11, 1978 and February 6, 1978 orders.

7. The defendants have failed in many other respects to comply with court orders and to plan rationally. See October 27, 1978 order. For example, though a comprehensive cost study would be of great value to the planning efforts and was ordered on February 6, 1978, the defendants have failed to file such a report.

Upon Dr. Leftwich's departure, this Court made clear its belief that desegregation is a difficult and complex task and that it would take an outside expert to replace the departing deputy superintendent. Despite these admonitions, the local defendants selected Margaret Fleming, an insider who admitted to having no previous desegregation experience except for the few tasks performed for the nascent effort in Cleveland.

The local defendants' failure to hire the appropriate experts has delayed effective planning long enough and can no longer persist. Desegregation implementation in September, 1979, or even February, 1980 will stand little chance of success unless experts are brought into the system.

■ The case law firmly supports the authority of a district court to hire consultants or experts to create a workable plan for desegregation implementation. *See, e. g., Swann, v. Charlotte-Mecklenburg Board of Education*, 306 F.Supp. 1291, 1313 (W.D. N.C.1969); *Keyes v. School District No. 1, Denver, Colorado*, 380 F.Supp. 673, 684 (D.Colo.1974); *Hart v. Community School Board of Brooklyn*, 383 F.Supp. 699, 758–769 (E.D.N.Y.1974); *Bradley v. Milliken*, 402 F.Supp. 1096, 1104 (E.D.Mich.1975); *Morgan v. Kerrigan*, 401 F. 216, 227 (D.Mass.1975); *Armstrong v. O'Connell*, 416 F.Supp. 1325, 1336 (E.D.Wis.1976); *Medley v. School Board City of Danville, Virginia*, 482 F.2d 1061 (4th Cir. 1973). In most cases, the experts were employed by the Court, paid by the defendants and provided advice and planning to the Court. Nevertheless, many other combinations might further the goal of infusing expertise into the system. For example, the experts perhaps could provide more guidance and the planning would be more coordinated if the expert were hired by the court, paid by the defendants and provided guidance and advice directly to the defendants.

■ In the equitable stage of a desegregation proceeding, a district court has a wide range of equitable powers available, ranging from putting the school system into a receivership, *Morgan v. McDonough*, 540 F.2d 527 (1st Cir. 1976), *cert. denied*, 429 U.S. 1042, 97 S.Ct. 743, 50 L.Ed.2d 755 (1977); *Turner v. Goolsby*, 255 F.Supp. 724 (S.D.Ga.1966); to ordering personnel shifts, *Morgan v. Kerrigan*, 509 F.2d 599 (1st Cir. 1975); *Davis v. School District of City of Pontiac*, 487 F.2d 890 (6th Cir. 1973); to supplanting some decision making powers of elected school board officials, *Morgan v. McDonough*, 540 F.2d 527, 534 (1st Cir. 1966). Prudence must be applied in utilizing these remedies and a proper regard for local autonomy must be considered. However, upon factual proof and a reasoned statement of legal principles, these devices may be required if it is reasonable in the circumstances. *Morgan v. McDonough*, 540 F.2d 527 (1st Cir. 1976); *Dayton Bd. of Ed. v. Brinkman*, 433 U.S. 406, at 410, 97 S.Ct. 2766, at 2770, 53 L.Ed.2d 851 (1977).

The January 8, 1978 stay period provides the unique opportunity to concentrate on developing viable plans for desegregation. Yet, this effort may falter if the defendants do not employ the proper resources for the task. Preliminarily, it seems that the defendants may continue to plan ineffectively because of their failure to hire outside experts voluntarily or pursuant to court order. Nevertheless, the record of the defendants' planning efforts to date needs to be fully explored.

■ It is therefore ordered that the defendants shall file a brief and memorandum within three weeks which:

a. Presents a detailed analysis of planning efforts of the defendants from June, 1978 to the present. This analysis, *inter alia*, shall set forth:

i. each final plan, position or policy which the defendants have drafted or are in the process of creating relative to desegregation (e. g., all past magnet school plans, a comprehensive magnet school plan, all past school closings plans, a comprehensive school closing plan, student disciplinary code, student transfer policy);

ii. the process by which each was drafted;

iii. their progress in developing the plan, position or policy if uncompleted, and their projected date for its completion;

iv. the type and extent of expertise used to draft the plan, position or policy;

v. the input of the Deputy Superintendent for Desegregation Implementation and the Superintendent into the drafting of the plan, position or policy;

b. Contains their recommendations for improving the planning process, particularly with respect to the utilization of outside experts.

The plaintiffs and amicus curiae shall file a brief on the same issues within four weeks of the opinion. All briefs shall cite case law authority and contain record citations, where appropriate.

IT IS SO ORDERED.