Jimmy R. SHAW, Walter A. Foddrell, Steven E. Lambert, Jr., Grover Shaw, and Roger Baker, individually and on behalf of all other similarly situated

v.

R.J. ALLEN, individually and in his official capacity as Sheriff of McDowell County, West Virginia; Robert Blair, individually and in his official capacity as McDowell County Commissioner; Jennings B. Boyd, individually and in his official capacity as McDowell County Commissioner; Roland L. Taylor, individually and in his official capacity as McDowell County Commissioner; McDowell County Commission; Eddie C. Beverly, individually and in his official capacity as chief jailor of the McDowell County Jail; and Harold B. Wolfe, individually and in his official capacity as chief field deputy of the McDowell County Sheriff's Department.

Civ. A. No. 81–1008.

United States District Court,
S.D. West Virginia,
at Bluefield.

Dec. 26, 1990.

Norman Googel, Appalachian Research & Defense Fund, Inc., Welch, W.Va., for plaintiffs.

Sarah N. Hall, Pros. Atty., Welch, W.Va., for defendants.

## ORDER

HALLANAN, District Judge.

On the 20th day of December, 1990, came the Plaintiff class, by counsel, Norman Googel, and also came the Defendants, McDowell County Sheriff R.J. Allen, Chief

Field Deputy Barry D. Hale, McDowell County Jail Administrator Janet Murphy, and McDowell County Commissioners Jerry Horne and Bobby Lewis, all in person and by counsel, Sarah N. Hall, McDowell County Prosecuting Attorney, for the hearing on the petition for contempt filed by the Plaintiff class and scheduled for a hearing on that day of December, 1990, by previous Order entered herein on the 13th day of December, 1990.

Upon consideration of all evidence submitted herein, the representations of counsel herein, and the pleadings of record herein, the Court hereby makes the following findings:

1. On April 11, 1983, a comprehensive Order was entered in the above class action enjoining Defendants from operating the McDowell County Jail in a manner which violates the Constitution of the United States as well as the Constitution and laws of the State of West Virginia. The Order specifically enumerated certain actions which must be taken and certain conditions which must be met by Defendants in order to achieve compliance with constitutional and statutory standards.

2. Since the time of the comprehensive Order Plaintiff class has initiated several contempt proceedings alleging that Defendants were not in compliance with the April 11, 1983, Order and in each such proceeding asking this Court to take such actions as are necessary to compel Defendants to comply with said Order. Specifically, Plaintiffs initiated contempt proceedings in April 1985, July 1987, October 1988, and most recently, August 1990.

3. In response to said petitions the Court has taken a number of approaches including the ordering of an inspection of the McDowell County Jail by Gordon Chris Kamka, William E. Moulden, and a sanitarian of their choosing (Ward Duel) and the submission of their findings and recommendations of proposed action by Order dated May 31, 1985; and finding the Defendants in contempt and ordering that the inmate population be reduced to twenty-four (24) inmates for the fiscal year 1987–1988 so as to achieve full compliance and further directing the Defendants to continue to fully comply after the removal of such inmate population "cap" on July 1, 1988, by Order dated December 2, 1987.

4. In Settlement of the last contempt proceeding prior to the instant one, the Court entered an Order on July 17, 1989, which, in part, found the Defendants to be in noncompliance with the Court's previous Orders and appointed William E. Moulden, Corrections Consultant, as a monitor for the purpose of conducting periodic inspections of the McDowell County Jail and for making written reports to the Court and to all parties of record on the status of Defendants' compliance with all pertinent Orders entered by this Court pertaining to conditions at the McDowell County Jail. In accordance with the Order appointing him as monitor William E. Moulden conducted inspections of the McDowell County Jail on September 1–2, 1989, and again on February 19, 1990.

5. In the written report of his September inspection dated September 4, 1989, Moulden reported to the Court that "the McDowell County Jail is in serious noncompliance with many aspects of the April 1983 court order" and that "I hold no hope that voluntary efforts at compliance will effect compliance with the 1983 court order."

6. Following the September 4, 1989, Moulden Report, other reports on the status of Defendants' compliance with this Court's Orders were filed with or brought to the attention of this Court in connection with this contempt proceeding, including: (a) Moulden's second monitoring report based upon his inspection of the McDowell County Jail on February 19, 1990; (b) a report entitled Review of Suicide/McDowell County Jail, April 27, 1990, prepared by the Facilities Review Panel of the West Virginia Supreme Court of Appeals; and (c) an investigative report prepared by Wideman and Associates, Inc. [hereinafter "Wideman Report"] based upon a jail inspection during October 1–3, 1990.

7. Despite the above three (3) mentioned prior contempt proceedings brought against the Defendants, and the Court's Orders entered pursuant thereto directing

compliance with its comprehensive Order of April 1983, the McDowell County Jail remains in substantial noncompliance with said Order.

8. The prevailing conditions of noncompliance in the McDowell County Jail have resulted in a situation of emergency creating health and sanitation hazards to inmates.

9. The failure of the Defendants to obtain and maintain adequate security has created an environment of endangerment for the safety of the correctional officers, the general public, and the inmates themselves.

10. The Defendants' repeated failure to achieve good faith, substantial compliance with this Court's comprehensive Order as well as Orders entered subsequent thereto has placed them in constant contempt of such Orders which they have failed to purge.

Upon examination of the relevant law, the Court makes the following conclusions of law:

1. "A district court's power to fashion and effectuate [its decrees of constitutional import] is broad and flexible, and the remedies may be 'administratively awkward, inconvenient, and even bizarre.' . . . Remedial devices should be effective and relief prompt." *Morgan v. McDonough*, 540 F.2d 527, 533 (1st Cir.1976) (citations omitted).

■ 2. The establishment of a receivership is an intrusive remedy which should only be resorted to in extreme cases. The appropriateness of a particular remedy is one of reasonableness under the circumstances. Where more traditional remedies, such as contempt proceedings or injunctions, are inadequate under the circumstances a court acting within its equitable powers is justified, particularly in aid of an outstanding injunction, in implementing less common remedies, such as a receivership, so as to achieve compliance with a constitutional mandate. *Morgan v. McDonough*, 540 at 533; *Newman v. State of Ala.*, 466 F.Supp. 628, 635 (M.D.Ala.1979); *United States v. City of Detroit*, 476

F.Supp. 512, 520 (E.D.Mich.1979); *Wayne County Jail Inmates, et al. v. Wayne County Chief Executive Officer, et al.*, 178 Mich.App. 634, 444 N.W.2d 549, 560–61 (1989); *See also Brown, et al. v. Bailey, et al.*, Civil Action No. 78–3046–H (S.D.W.Va. June 5, 1981); *Turner v. Goolsby*, 255 F.Supp. 724 (S.D.Ga.1966); *Crain v. Bordenkircher*, 376 S.E.2d 140, 143 (W.Va. 1988).

3. Economic factors may appropriately be considered in selecting those methods utilized to achieve effective management of prisons and jails, "[b]ut the cost of protecting a constitutional right cannot justify its total denial." *Bounds v. Smith*, 430 U.S. 817, 825, 97 S.Ct. 1491, 1496, 52 L.Ed.2d 72 (1977). "Once a state legitimately deprives a person of his liberty, it is required to shoulder the economic burden necessary to preserve the constitutional rights retained by the person within the walls of the jail or prison." *Dawson v. Kendrick*, 527 F.Supp. 1252, 1283 (S.D.W.Va.1981).

■ 4. "It is well established that convicted prisoners do not forfeit the fundamental protections of the Constitution by reason of their conviction and confinement." *Cooper v. Gwinn*, 171 W.Va. 245, 298 S.E.2d 781, 787 (1981). The West Virginia Supreme Court of Appeals has noted in regards to its state prison system that:

"[A] fundamental reason for the existence of government is the maintenance of civilization." *Moore v. Starcher*, [167 W.Va. 848, 280 S.E.2d 693 (1981) ] supra [280 S.E.2d] at 696. The care a society provides its prisoners is one of the ultimate measures of its civilization. . . . [T]he establishment and maintenance of a corrections system is one of the essential responsibilities of government which the Governor must address in the budget before societal luxuries are addressed.

The incarceration of individuals who have broken society's laws is a public act for which the people through their government must take ultimate responsibility. . . . In recognition of this responsibility our Legislature has said that inmates incarcerated in state prisons shall be rehabilitated through programs of

classification, education and treatment. A plea of lack of funds is an insufficient justification for the failure of the executive department to implement this mandate. "Politically motivated pleas of public poverty cannot be used to brush aside the fundamental duties of government to the maintenance of civilization." *Moore v. Starcher,* supra, [280 S.E.2d] at 696.

*Cooper v. Gwinn,* 298 S.E.2d at 792–93.

■ Upon application of the above legal principles to the facts of this case, the Court is of the opinion that the appointment of a receiver for the McDowell County Jail is both necessary and reasonable. It has been nearly eight (8) years since the entry of the Court's comprehensive Order and yet the McDowell County Jail still remains in substantial noncompliance. Throughout the tumultuous history of this case, the Court has exercised restraint attempting to give due deference to McDowell County elected officials' ability to observe and obey the duties and obligations placed upon them by federal and state law. Such exercise of deference, however, has been unavailing, and it now appears that a more intrusive course of action is warranted.

The Court understands that McDowell County has a limited budget and that the lack of adequate funding has been, and remains, a continuous problem and contributing factor in this saga. The Court further believes that certain of the Defendants both understand and desire to obey their constitutional duties and obligations as outlined in this Court's Orders. In fact, it has been such recognitions which have prevented the Court from taking a more intrusive course of action earlier.

However, the Court is also not so naive as to fail to recognize from the record before it that factors of a "political" nature are also guiding the Defendants. Certainly, it may be said without a great deal of reservation that the expenditure of a significant portion of a limited budget so as to protect the constitutional rights of prisoners is not a paramount concern in the minds of many citizens. In fact, many may inappropriately consider it both an unnecessary and unwarranted expenditure of public funds. In essence, it is the Court's view that the Defendants are, at least in part, "passing the buck" to it. Well, if it may appropriately be said, the "buck stops here" for the Court is constitutionally bound to "pick up the gauntlet."

What elected officials may consider "good politics" does not necessarily coincide with "good government." Normally, however, separation of powers principles dictate that duly elected public officials be permitted to operate within their respective spheres without interference from another branch of government. And, certainly, principles embodying federalism further prohibit the federal judiciary's interference in state or local government. But where the actions or omissions of elected public officials, whether representatives of federal, state, or local government, impermissibly infringe on the constitutionally protected rights of individuals, including prisoners, federal courts as interpreters and, most importantly, protectors of the United States Constitution must act to stop such infringement. The present case is one such situation.

As noted previously, there have already been no less than three (3) contempt proceedings brought prior to that presently before the Court. All of which have been to no avail, even though the last such proceeding resulted in this Court appointing William E. Moulden to serve as its monitor to the McDowell County Jail. The result is a dismal history of noncompliance. An allowance of additional time, as now requested by the Defendants to purge their contempt, in the Court's opinion would only likely result in additional injunctions or contempt proceedings and would offer little hope of anything other than further confrontations and delays. While the Court realizes that the implementation of a receivership is indeed an intrusive remedy, it wishes to note that such a course of action is not as drastic and intrusive as the ultimate course of action this Court could, and may yet, effectuate—that of ordering the McDowell County Jail closed. A course of

action which has in fact been suggested as the most appropriate one by one of the Plaintiffs' experts.

Accordingly, it is hereby ORDERED that a receiver should be, and one hereby is, appointed for the purpose of operating the McDowell County Jail to achieve compliance with the Court's comprehensive Order entered on April 11, 1983, and to ensure that the McDowell County Jail is in compliance with the requirements of the United States Constitution and the Constitution and laws of the State of West Virginia. The Court appoints W. Joseph McCoy, Assistant Professor, Marshall University, and former Commissioner of the West Virginia Department of Corrections as well as former receiver of the Cabell County Jail to act in such capacity. In making this appointment the Court charges its receiver with the duty of faithfully and promptly implementing and executing the prior Orders of the Court to insure that the McDowell County Jail meets federal constitutional standards within the foreseeable future.

### Powers of the Receiver

The Court finds that the general and broad powers most appropriately given to its receiver under the facts of this case are essentially those previously given to W. Joseph McCoy while he acted in his capacity as receiver of the Cabell County Jail. *See Brown, et al. v. Bailey, et al.,* Civil Action No. 78–3046–H (S.D.W.Va. June 5, 1981).

■ Accordingly, the powers of the receiver to implement this Order shall be that authority, which in usual circumstances, is vested by law in the County Commission and the Sheriff of McDowell County as such relates to the operation of the McDowell County Jail and its environs.

The receiver shall, under such regulations as may be prescribed by the law of the State of West Virginia, have the superintendence and administration of the internal police affairs of McDowell County with authority to effectuate this Order and the previous Orders of this Court. Further, the receiver may exercise such other powers as the County Commission and Sheriff of McDowell County possess and perform such other duties as may be prescribed by the law of the State of West Virginia to the extent necessary to effectuate this Order and the previous Orders of this Court. Among such powers the receiver shall have authority:

1. To contract with the County, to appoint personnel, and do whatever is lawful and required for the administration of the jail;

2. To make continuing recommendations to this Court for modifications in its comprehensive Order of April 1983, and Orders entered subsequent thereto;

3. To formulate and implement such plans as shall be necessary to provide for an acceptable level of security and control among the inmates;

4. To ensure that the Jail staff is adequate in number, training, and remuneration in order to achieve compliance in accordance with this Order;

5. To take such actions as are necessary to ensure that health and safety standards are devised, written, published, and implemented;

6. To devise and implement such plans and procedures as shall be necessary to ensure that the basic privileges and rights of inmates are recognized and observed;

7. To have unlimited access to the records, files and papers maintained by the McDowell County Jail system, including all institutional and inmate records, as well as those records, files and papers maintained by the McDowell County Commission or Sheriff where reasonable and deemed necessary by the receiver to achieve compliance with the Court's Orders;

8. To have unlimited access to any facilities, buildings, or premises under the jurisdiction or control of the McDowell County Commission or Sheriff where reasonable and deemed necessary by the receiver to achieve compliance with the Court's Orders;

9. To conduct confidential interviews with all staff members and employees of the McDowell County Jail system. In addi-

tion, he may engage in informal conferences with such staff members and employees, and such persons shall cooperate with the receiver and respond to all inquiries and requests related to compliance with the Court's Orders in this case;

10. To conduct confidential interviews and meetings with any prisoner or group of prisoners under the jurisdiction of the McDowell County Jail system;

11. To recommend, seek, and process grant applications from the State of West Virginia, the United States of America, or private bodies which may be available to effectuate the Orders of this Court or to aid in achieving compliance;

12. To bring in and use, at his discretion, and as is permissible by law, personnel of the West Virginia Department of Corrections or other agencies of the State of West Virginia;

13. To consult with and seek the aid of the Jail inspector of the United States Marshal Service, Department of Justice, toward the implementation of the Orders of this Court and in aid of achieving compliance;

14. To secure or acquire such appropriate equipment as shall be necessary to aid him in the carrying out of his duties, including necessary vehicles, computer equipment, and the like;

15. To enter into such contracts as shall be necessary to retain such correctional consultants, experts, or other persons to provide training to Jail staff, or to assist him in any other manner necessary in carrying out his duties as receiver and in aid of achieving compliance; and

16. To seek further Orders from the Court in aid of execution of his duties as receiver.

The Defendants, their successors in office, agents, employees and servants, and all persons in concert and participation with them, are ORDERED to faithfully observe the obligations of this Order and to cooperate fully with the receiver in the discharge of his duties and in such actions as he shall take towards the end of achieving compliance

It is hereby ORDERED that the receivership shall last for a period of one year unless prior to such time the receiver certifies to this Court that he has accomplished his tasks and believes that the McDowell County Jail has achieved a state in which it will continue to be in compliance with this Court's directives through the efforts of the Defendants without his supervision; or, alternatively, that the McDowell County Jail remains in noncompliance and/or is of yet unable to remain in compliance without his supervision and that a continuation of the receivership is necessary to achieve such compliance and/or the ability of the Defendants to remain in compliance without his supervision. At such time the parties may petition the Court as to their agreement or disagreement in the matter.

It is further ORDERED that the receiver shall be compensated for his services at the rate of $200.00 per day,[1] plus reimbursement for travel, lodging and all other reasonable and necessary costs incidental to the carrying out of his duties as receiver. The Court finds that those amounts requested by W. Joseph McCoy and presented to the Court in the parties' earlier submitted joint memorandum of law on receiverships to be so reasonable and necessary.

It is further ORDERED that all reasonable and necessary costs of this receivership, including the posting of a bond if one is requested, shall be borne by the Defendants from the general funds of the County.

In light of evidence presented to the Court, as one of his first endeavors, the receiver is directed to report to the Court no later than January 15, 1991, as to whether the conditions of the McDowell County Jail are so uninhabitable as to dic-

---

**1.** The Court realizes that this sum assumes that the receiver will act in a full time capacity. The Court shares the parties' hope that the receiver will only need to operate in a full time capacity in the beginning of the receivership. Should such occur and the receiver later need only operate on a part time basis, the parties and receiver may petition this Court as to a reasonable hourly rate for his services.

tate that the inmates presently confined in the jail be temporarily moved to other locations of confinement so that necessary repairs can be made; and, if so, to conduct an investigation and report his findings to the Court as to available, alternative locations of confinement. Shall the receiver at any time determine that the conditions of the McDowell County Jail are in such a state of disarray as to make its compliance impossible, and its closing mandated, he shall immediately report so to the Court along with his reasons for such belief.

Additionally, the receiver is directed to make a progress report to the Court no later than on February 15, 1991, and thereafter by the 15th day of every other month during which the receivership is in effect. The directives of this Order and the powers of the receiver as set forth herein shall be considered effective upon entry of this Order and the receiver shall begin the administration, management, operation, and control of the McDowell County Jail no later than on January 2, 1991.

IT IS SO ORDERED.