WAYNE COUNTY JAIL INMATES v WAYNE COUNTY CHIEF
EXECUTIVE OFFICER

Docket No. 115672. Submitted May 10, 1989, at Detroit. Decided July
26, 1989.

In 1971, plaintiffs, Wayne County Jail inmates Michael Harris,
James Johnson, and others, brought a class action suit in the
Wayne Circuit Court against the Wayne County Sheriff, the
Wayne County Chief Executive Officer, and others, for equita-
ble relief from alleged depraved, inhuman, and barbaric condi-
tions at the Wayne County Jail. A three-judge panel held for
the plaintiffs, finding the conditions in the jail deplorable and
in violation of the inmates' rights. The court issued orders
designed to improve the jail and appointed a monitor to investi-
gate and report on the status of defendants' compliance with
the orders. The orders for relief and appointment of a monitor
were appealed to the Court of Appeals. Plaintiffs applied to the
Supreme Court for leave to appeal prior to decision by the
Court of Appeals. Leave was granted and the Supreme Court
affirmed and remanded with instructions. 391 Mich 359 (1974).
Thirteen years went by with numerous dispositional orders
being entered. On April 9, 1987, all the parties except the
inmates consented to a judgment (final judgment). On May 12,
1988, an appeal and cross-appeal therefrom were dismissed, the
parties having amicably settled their differences over the final
judgment. The monitor issued a report on March 11, 1988,
which noted improvements in some areas but identified, de-
scribed, and documented substantial noncompliance with the
final judgment. Following further discussions, the Wayne Cir-
cuit Court, on May 13, 1988, adopted the monitor's report, with
one exception, as its findings of fact in conformity with a
stipulation by all of the parties. The inmates then moved for
appointment of a receiver. Argument was had before the
Wayne Circuit Court, Nathan J. Kaufman, J. The sheriff moved
to disqualify Judge Kaufman and the entire Wayne Circuit

REFERENCES

Am Jur 2d, Appeal and Error §§ 150-155; Courts §§ 87 *et seq.*;
Judges §§ 97 *et seq.*; Receivers §§ 19-21.

See the Index to Annotations under Bias or Prejudice; Prisons and
Prisoners; Receivers and Receivership.

Court bench. Judge Kaufman denied both motions. The Court of Appeals denied leave to appeal from that order on September 26, 1988. Court of Appeals Docket No. 111714. The State Court Administrator referred the unsuccessful motion to disqualify to Oakland Circuit Judge Robert C. Anderson, who denied the motion. The sheriff appealed and the Court of Appeals denied relief on December 13, 1988. Court of Appeals Docket No. 112798. The Supreme Court denied leave to appeal on February 1, 1989, and a motion for reconsideration on March 31, 1989. 432 Mich 857 (1989). On February 16, 1989, Judge Kaufman granted the motion for receivership, naming Edward McNamara, the Wayne County Executive, as the receiver. The sheriff appealed and filed a motion for a stay which was denied. The inmates moved for punitive damages for the taking of a frivolous appeal. The motion was taken under advisement, to be reviewed on full submission of the cause. On emergency leave to appeal, the Supreme Court reversed the Court of Appeals and stayed the receivership order on March 24, 1989, directing the expeditious hearing and decision of the case. 432 Mich 882 (1989). The Court of Appeals thereafter granted a motion to file an amicus curiae brief by the Michigan Sheriffs' Association.

The Court of Appeals *held:*

1. The circuit court had authority to enter its receivership order. The receivership was a proper remedy and the circuit court did not abuse its discretion by entry of the order.

2. The sheriff's claims that the record was produced deficiently are without merit.

3. The circuit court did not err in selecting the Wayne County Executive as the receiver.

4. The refusal to disqualify either Judge Kaufman or the entire Wayne Circuit Court bench was not erroneous.

5. The inmates' motion for punitive damages was denied by the Court of Appeals.

Affirmed.

1. COURTS — JURISDICTION — RECEIVERS — EQUITY.

A circuit court has jurisdiction to appoint a receiver in all cases pending before the court in which appointment of a receiver is allowed by law; the phrase "allowed by law" includes not only those cases in which the appointment of a receiver is provided for by statute but also those cases in which the facts and circumstances render the appointment of a receiver an appropriate exercise of the circuit court's equitable jurisdiction (Const 1963, art 6, § 13, MCL 600.601; MSA 27A.601).

2. APPEAL — REMEDIES — RECEIVERSHIP.

The Court of Appeals reviews a decision of a circuit court to appoint a receiver to implement its orders on the basis of whether there was an abuse of discretion.

3. COURTS — REMEDIES — RECEIVERSHIP.

The appointment of a receiver is a harsh remedy which should only be resorted to in extreme cases, and if less intrusive means are available to effectuate the relief granted by a trial court, a receiver should not be used; when other approaches have failed to bring about compliance with the court's orders, whether through intransigence or incompetence, a receivership may then be appropriate.

4. JUDGES — BIAS OR PREJUDICE.

An actual showing of prejudice is required before a trial judge will be disqualified for prejudice.

5. JUDGES — BIAS OR PREJUDICE — MOTIONS TO DISQUALIFY.

A motion to disqualify a trial judge must be filed within fourteen days after the moving party discovers the ground for disqualification; if the discovery is made within fourteen days of the trial date, the motion must be made forthwith; if a motion is not timely filed, untimeliness is a factor in deciding whether the motion should be granted (MCR 2.003[C][1]).

6. JUDGES — BIAS OR PREJUDICE — DISQUALIFICATION OF JUDGE.

The interest which will disqualify a judge must be such an interest in the subject matter that he will be directly affected through pecuniary or property gain or loss.

*Michigan Legal Services* (by *Kathleen A. Gmeiner* and *Alan S. Ells*), *Glotta, Rawlings & Skutt, P.C.* (by *Richard M. Skutt*), and *Goodman, Eden, Millender & Bedrosian* (by *William H. Goodman* and *Deborah Choly*), for plaintiffs.

*Bodman, Longley & Dahling* (by *Joseph A. Sullivan* and *Charles N. Raimi*), for the Wayne County Sheriff.

*Saul A. Green,* Wayne County Corporation Counsel, and *Glen H. Downs* and *Ellen E. Mason,* for the Chairperson of the Wayne County Board of Commissioners.

*Michael E. Duggan,* for the Wayne County Chief Executive Officer.

Amicus Curiae:

Michigan Sheriffs' Association (by *Paul A. Rosenbaum*).

Before: CYNAR, P.J., and WAHLS and MARILYN KELLY, JJ.

MARILYN KELLY, J. This class action was filed by the Wayne County Jail inmates in 1971. It sought equitable relief from "depraved, inhuman and barbaric" conditions at the jail. A three-judge panel issued its opinion on May 18, 1971. The panel members were then-Wayne Circuit Judges Victor J. Baum, Richard M. Maher and John D. O'Hair. They found conditions in the jail deplorable and in violation of the inmates' rights as claimed. Violations included:

—serious overcrowding;
—violations of plumbing, ventilation, heating, electrical, fire and sanitation laws;
— . . . "[a]n investigated assault rate of almost 100 in eleven months . . . too high by any reasonable standard";
—an unreasonable risk of suicide;
—the exacerbation of mental illness by "the stark physical environment and harsh regimen of the jail," compounded by enforced idleness, lack of recreation and lack of staff;
—the existence of a "health program [which] fails to provide reasonable care for existing illness and fails to provide reasonable safeguards against future preventable illness";
—poor sanitation;
—inadequate nutrition, lack of warm meals;
—interference with mail;

—lack of standards for assignment to maximum security.

In light of these conditions, the Wayne Circuit Court issued orders designed to improve the jail. It included among them the appointment of a monitor to investigate and report on the status of defendants' compliance with court orders. The orders for relief and appointment of a monitor were appealed and affirmed in *Wayne Co Jail Inmates v Wayne Co Sheriff,* 391 Mich 359; 216 NW2d 910 (1974) *(Inmates I).* In that opinion, the Supreme Court concluded, p 369:

> The trial court retained jurisdiction to assure compliance with its order.
> As noted above the defendant commissioners challenged only the power of the court to enter its order and did not dispute the specific provisions of it.
> In light of the fact that full compliance comprehends the expenditure of large sums of public money the defendant commissioners are directed within 30 days to introduce before the trial court any evidence they may have which puts in question the propriety of the specific provisions of the order. Such 30-day period shall not be extended by reason of any further application or proceedings in this or any other court. Upon consideration thereof the trial court is directed to issue a current order as may be appropriate.
> We retain jurisdiction for the purpose of reviewing without delay any objections to such updated order with the end of bringing to a conclusion this controversy which is already too long protracted, and to securing for the plaintiffs relief to which they are entitled.
> Remanded.

Thirteen years went by with numerous dispositional orders being entered. Ultimately on April 9,

1987, all the parties except the inmates consented to a judgment (final judgment). It was corrected by order of April 30, 1987, and amended by order of December 4, 1987. The Chairperson of the Wayne County Commission (commission) appealed by right to this Court. The Wayne County Executive and the inmates cross appealed (Docket No. 110295). On May 12, 1988, both the appeal and cross appeal were dismissed for no progress. It appeared from this Court's file that the parties had amicably settled their differences over the final judgment.

The circuit court appointed a new jail monitor, Vincent M. Nathan, in May of 1987. It named a comonitor, Paul Belazis, several months later. A remedial order, generated by a monitor's report of July 10, 1987, resulted in a further order governing recreation at the jail to which the parties stipulated.

By February of 1988, the monitor issued a preliminary report regarding compliance with the final judgment. It was followed by a March 11, 1988, "Comprehensive Report of the Court Monitor on the Defendants' State of Compliance" (monitor's report).

The monitor's report is 122 pages long and has several hundred pages of appendices. It describes jail conditions the monitors observed from March through November, 1987, and carries this proviso: "Although the facts set forth below demonstrate noncompliance with certain provisions of the final judgment, no specific recommendations for supplemental relief are made in this report."

The categories addressed are:

A. Visitation;

B. Inmate recreation;

C. Mail;

D. Clothing and linen;

E. Physical plant maintenance and sanitation;

F. Disciplinary and grievance process;

G. Maximum security;

H. Health care (adopted experts' report, a copy of which was Appendix v);

I. Food service (adopted experts' report, a copy of which was Appendix w);

J. Training;

K. Law library;

L. Classification;

M. Staffing;

N. Population limits and overcrowding.

While the monitor's report notes improvements in some areas, it identifies, describes and documents substantial noncompliance in every category covered in the final judgment.

The sheriff responded to the monitor's report by requesting a hearing. The parties were given the opportunity to discuss their concerns with one another and with the trial judge and negotiated a stipulation on May 13, 1988. In it the sheriff withdrew his request for a hearing. Each of the parties confirmed the observations of the trial court's medical experts which had been adopted by the monitor. The sole exception was an objection by the sheriff to observations on individual patient care.[1] The parties concurred in the monitor's fundamental observations concerning deficiencies at the jail. The Wayne Circuit Court adopted the monitor's report as its findings of fact in conformity with the stipulation of all the parties in its order of May 13, 1988.

---

[1] At oral argument, the parties clarified that the sheriff's only concern was that the stipulation regarding medical treatment might be used against him by an inmate in a future medical malpractice suit.

Following entry of the order, activities commenced on three distinct fronts. First, the sheriff undertook compliance activities. He began development of policies and procedures manuals, a listing of which can be found in an October 17, 1988, report of corrective action. According to this report, numerous procedures already were in process. Others were implemented, while still others could not be accomplished because of the Wayne County Executive's lack of cooperation.

The second front focused on a millage in Wayne County to supply twenty million dollars annually for jail facilities and operations. Revenue was projected to commence in December of 1988 and to continue for ten years.

The third front involved placing the jail under central county administration by petition of the Wayne County Executive filed August 16, 1988. The County Executive asked to be appointed temporary administrator of the jail.

In this regard, a settlement conference was held at which Judge Kaufman suggested a compromise: both the sheriff and the Wayne County Executive would voluntarily relinquish power to Vincent Nathan as temporary receiver. No agreement was reached.

Then a motion was made for appointment of a receiver, this time by the inmates. The Wayne County Executive withdrew his petition. Argument was had before Judge Kaufman during which it was urged variously that the receiver named be Vincent Nathan, the Wayne County Executive, or someone else. The sheriff strenuously objected to both the substance of the motion and the procedures used to decide it. The parties were given a fairly tight time frame in which to file further documentary evidence including affidavits and depositions. No evidentiary hearings were allowed,

and final briefs were submitted to Judge Kaufman by December 16, 1988.

Next, the sheriff moved for the disqualification of Judge Kaufman and of the entire Wayne Circuit Court bench. The judge denied both motions on September 16, 1988. The sheriff sought leave to appeal to this Court in Docket No. 111714. A panel consisting of WILLIAM R. BEASLEY, WALTER P. CYNAR and MICHAEL J. KELLY denied leave to appeal on September 26, 1988. The State Court Administrator referred the unsuccessful motion to disqualify to Oakland Circuit Judge Robert C. Anderson. He denied the motion on October 18, 1988. That decision was appealed to this Court in Docket No. 112798. The same panel denied relief by order of December 13, 1988. The Supreme Court denied leave to appeal on February 1, 1989, and denied the motion for reconsideration on March 31, 1989. 432 Mich 857 (1989).

Judge Kaufman then granted the motion for receivership. His opinion and order are dated February 16, 1989, and will be referred to as the "receivership order." He summarized the decision as follows:

> For eighteen years seven judges of this Court including four Chief Judges, have struggled to bring the Wayne County Jail into compliance with the law. Without doubt limited progress toward that end has been made. Almost all such progress, however, has been the result of judicial intervention and can trace its roots to court orders.
>
> Unfortunately, substantial noncompliance remains, and the bottom line is this: the Sheriff's mismanagement, or lack of management, has prevented substantial compliance.
>
> The Sheriff has chosen what he considers to be good politics over good government. The result has been substantial and continuous mismanagement

of the jail. The duly elected Sheriff generally is entitled to run an inefficient department. Democracy does not prohibit mismanagement. When, however, such mismanagement results in serious and longstanding violations of the law, the Court has not only the right, but the duty, to take the steps necessary to end these legal violations of law.

The eighteen year history of this litigation teaches that only one method remains to cure these violations. The Court must exert additional control over the compliance process through appointment of a receiver. Only this step offers any realistic prospect of bringing the "jail case" to an end in the foreseeable future.

It is clear to the Court at this juncture that the only means by which the Wayne County Jail will achieve substantial compliance with the law, and thus, by which the last chapter of this lawsuit will be written, is the fixing of responsibility for the funding and operation of the Wayne County Jail in the hands of a receiver who is capable of curing the present problems of mismanagement. For the reasons outlined in this Opinion, that person is the Chief Executive Officer for the County of Wayne.

Consequently, the Court by this Opinion and Order grants, in large part, the Plaintiff's Motion for Receivership, and appoints the Chief Executive Officer for the County of Wayne as the receiver for the Wayne County Jails.[1]

---

[1] The Plaintiffs' motion, however, clearly contemplated the appointment of someone other than the Sheriff or CEO to serve as receiver.

---

In his decision, Judge Kaufman first gave the background of the case, then found continuing noncompliance with the final judgment. He cited as the offending areas environmental conditions, mental health, medical care, classification and discipline. He reviewed the sheriff's attempts at compliance and found them wanting. In virtually every area of jail operations, he noted an absence

of the organization, leadership and direction necessary to carry out his mandate.

Judge Kaufman addressed the problem of responsibility for failure shared by the sheriff and the Wayne County Executive:

> Although mismanagement and absence of administrative direction at the jail have been the primary contributing factors in the continued failure to achieve compliance with this Court's Final Judgment, it also is clear that in some other areas the jail has been plagued by insufficient staff and resources necessary to its effective operation. The absence of direction in jail administration, the failure of the Sheriff to make effective use of existing staff resources and the Sheriff's diversion of jail staff to other operations under this control,[51] however, have created an ongoing and apparently intractable conflict between the Sheriff and the Chief Executive Officer over allocation of staff resources for jail operations. The Chief Executive Officer has refused to provide additional funds to a jail administration that he believes, with substantial justification, will make ineffective use of those resources.[52] The continuing conflict between the Sheriff and the Chief Executive Officer not only has been documented in the *Comprehensive Report,* but also is evident from the tenor of the proceedings in this case. The combination of mismanagement and insufficient funding has resulted in continued serious violations of the rights of prisoners under the Final Judgment and under the Constitution and laws of the State of Michigan.[53]

---

[51] The testimony and other evidence indicate that the Sheriff, without the Chief Executive Officer's concurrence, repeatedly has diverted to other operations under his control staff who have been budgeted to the jail.

[52] During his deposition, Monitor Nathan testified that, given the current absence of appropriate jail policies, it is not possible to determine the level of staffing needed to remedy violations of the Court's order. Mr. Nathan also testified that, given the nature of the current management of the jail, an increase in funding would not be likely to improve compliance with the Final Judgment. Similar opinions were voiced by Monitor

Belazis and Mr. Kenneth Faiver, one of the court-appointed
health care experts. Both testified that appropriate staffing
levels could not be addressed until necessary standards and
policies were developed.

[53] At this point it is sufficient to note that, whatever the
actions of the County Commissioners in the past that may have
thwarted implementation of the remedial orders, the defen-
dants' present failure to achieve compliance cannot be substan-
tially attributed to the acts of the County Commissioners.

Judge Kaufman then reviewed public statements
by the sheriff which had been made part of the
record showing the sheriff treated the proceedings
as political rather than legal. One example is
found in that the sheriff conveyed the impression
that the court had mandated that he provide video
games for the prisoners. In fact, that idea came
from the sheriff's own administration. Judge Kauf-
man found such statements revealing of the degree
of the sheriff's commitment to court-directed im-
provement of the jail, citing *Perez v Boston Hous-
ing Authority,* 379 Mass 703; 400 NE2d 1231
(1980).

After a lengthy review of legal precedents for
appointment of a receiver, the court distilled and
applied the relevant legal rules, concluding:

In summary, after nearly two decades the record
in this case, viewed in its entirety, demands that a
receiver now be appointed to bring the jail into
compliance with the Final Judgment.[66] Accord-
ingly, for all the reasons that have been explained,
the Court will grant plaintiffs' motion to appoint a
receiver to oversee the administration and opera-
tion of the Jail.

[66] There is, of course, an even more drastic remedy, namely
the closing of the jail. See *Newman [v Alabama,* 466 F Supp
628, 635 (MD Ala, 1979)]. In light of that alternative, the more
reasonable approach is to appoint a receiver.

Judge Kaufman chose the Wayne County Execu-

tive rather than Vincent Nathan or an "outside" expert, because that appointment intruded least upon the governing structure of Wayne County. The receivership order vested plenary authority in the Wayne County Executive as receiver saying:

> Mr. Edward McNamara, the Chief Executive Officer of Wayne County, is hereby appointed receiver of the Wayne County Jail. As receiver, Mr. McNamara shall exercise responsibility and control over all operational matters relating to all Wayne County Jail facilities. Mr. McNamara shall be responsible also for the supervision of all administrative, civilian and security staff of the jail and shall exercise all authority with respect to the operation of the jail that formerly resided in the Sheriff of Wayne County. Mr. McNamara shall retain responsibility for all fiscal matters relating to the jail that he currently exercises as the County's Chief Executive Officer. All these responsibilities shall be carried out, however, as receiver appointed by the Court.
>
> Mr. McNamara is directed to take all reasonable and necessary steps to advance compliance with the Final Judgment in this cause and to bring this controversy to a conclusion at the earliest possible date. Mr. McNamara shall provide the Court with quarterly progress reports and shall work closely with the court monitors appointed in this cause, who shall continue to provide oversight of compliance efforts and report their findings to the Court.
>
> At the conclusion of one year from the effective date of Mr. McNamara's appointment as receiver, the monitors shall prepare a comprehensive report of the defendants' compliance with the Final Judgment. Upon submission of that report, the Court will consider whether it is appropriate to terminate the receivership and return operational control of the jail to the Sheriff, or, in the absence of compliance, to take such other steps as are necessary to bring about compliance with the Final Judgment.

Because the recent record in this case does not

reflect any failure on the part of the defendant County Commissioners to provide funding for jail operations requested by the Chief Executive Officer, the authority of the County Commission shall not in any way be affected by this order appointing a receiver. The receiver is directed, however, to bring to the Court's attention with due diligence any obstacles he may encounter in his efforts to obtain approval of funding necessary to achieve compliance with the Final Judgment in this case.

Mr. McNamara's appointment shall be effective on March 16, 1989.

It is from this order that the sheriff filed his claim of appeal on March 3, 1989. A panel of this Court consisting of GARY R. McDONALD, DONALD E. HOLBROOK, JR., and WILLIAM B. MURPHY denied the sheriff's motion for stay on March 16, 1989. A motion by the inmates asking punitive damages for taking a frivolous appeal was made and taken under advisement, to be reviewed on full submission of the cause. On emergency leave to appeal, the Supreme Court reversed this Court and stayed the receivership order on March 24, 1989, directing our expeditious hearing and decision of the case. 432 Mich 882 (1989).

This Court, by order of March 27, 1989, directed filing of appellant's brief no later than April 14, 1989, with appellees' deadline set as May 5, 1989. Those briefs were filed, as well as a motion to file an amicus curiae brief by the Michigan Sheriffs' Association. That motion was granted by this panel by order of May 5, 1989. The sheriff filed a reply brief, and oral argument was held May 10, 1989.

For the reasons set forth in this opinion, we hold:

1. The Wayne Circuit Court had authority to enter its receivership order.

2. The Wayne Circuit Court did not abuse its discretion by entry of the receivership order in light of the record in this matter.

3. The receivership was a proper remedy based on the record.

4. The sheriff's claims that the record was deficiently produced are without merit.

5. The Wayne Circuit Court did not err in selecting the Wayne County Executive as the receiver.

6. The refusal to disqualify either Judge Kaufman or the entire Wayne Circuit Court bench was not erroneous.

7. The motion for punitive damages sought under MCR 7.216(C) is denied.

I

THE WAYNE CIRCUIT COURT HAD AUTHORITY TO
ENTER ITS RECEIVERSHIP ORDER.

As noted in *Inmates I,* 391 Mich 366:

> The appointment of a person to carry out functions the court deems necessary to provide full and complete relief is not a novelty in American jurisprudence.[2]

---

[2] See, for example, *Silver v Ladd,* 74 US 219; 19 L Ed 138 (1868) (commissioner to convey title); *Grand Rapids Trust Co v Carpenter,* 299 Mich 491; 201 NW 448 (1924) (receiver for a corporation); *Jefferson County, ex rel Grauman v Jefferson Fiscal Court,* 301 Ky 405; 192 SW2d 185 (1946) (commissioners to advise regarding change in boundaries of voting precincts); *O'Neil v United Association of Journeymen Plumbers,* 348 Pa 531; 36 A2d 325 (1944) (master to supervise election of union officers); *Bartlett v Gates,* 118 F 66 (CA 8, 1902) (master to supervise election of corporate officials); *United States v Manning,* 215 F Supp 272 (WD La, 1963) (referees to protect voting rights).

---

This allusion to the plenary authority of the circuit court to appoint a receiver is more fully

discussed in *Petitpren v Taylor School Dist,* 104 Mich App 283, 292-294; 304 NW2d 553 (1981), lv den 412 Mich 899 (1982):

> At the heart of this case is the issue of whether the trial court had the authority to appoint a receiver for the Taylor School District. It is clear that in this state the circuit court has been granted broad jurisdiction, subject only to certain specific exceptions. Const 1963, art 6, § 13, MCL 600.601; MSA 27A.601. The statute which specifically addresses the circuit court's jurisdiction to appoint receivers provides in part:
> *"Circuit court judges in the exercise of their equitable powers, may appoint receivers in all cases pending where appointment is allowed by law.* This authority may be exercised in vacation, in chambers, and during sessions of the court. In all cases in which a receiver is appointed the court shall provide for bond and shall define the receiver's power and duties where they are not otherwise spelled out by law." MCL 600.2926; MSA 27A.2926. [Emphasis added.]
> This statute does not independently grant the court the authority to appoint receivers but rather confirms that appointment of a receiver is a remedy available to the court in situations where "allowed by law." Although there are several statutes which specifically allow appointment of a receiver,[8] the phrase "allowed by law" is not limited to these statutes, since the Supreme Court has recognized that there are cases where the trial court may appoint a receiver in the absence of a statute pursuant to its inherent equitable authority. See *Michigan Minerals, Inc v Williams,* 306 Mich 515, 525-527; 11 NW2d 224 (1943); *Grand Rapids Trust Co v Carpenter,* 229 Mich 491; 201 NW 448 (1924).[9] It thus becomes apparent that, as used in the statute, the phrase "allowed by law" refers to (1) those cases where appointment of a receiver is provided for by statute and (2) those cases where the facts and circumstances render the appointment of a receiver an appropriate exer-

cise of the circuit court's equitable jurisdiction. Accordingly, the fact that no specific statute calls for appointment of a receiver in the instant case did not deprive the trial court of the authority to make such an appointment.

---

[8] See, e.g., MCL 600.2927(2); MSA 27A.2927(2), MCL 600.3348; MSA 27A.3348, MCL 600.4531; MSA 27A.4531, MCL 552.27; MSA 25.105, MCL 722.719(e); MSA 25.499(e), MCL 566.20; MSA 26.890.

[9] "We may doubtless inquire in this proceeding whether the court in appointing a receiver was wholly without jurisdiction. If we correctly interpret defendant's claim it is that a court of equity has no jurisdiction to appoint a receiver for a corporation except in a voluntary proceeding provided for in § 13563 *et seq.,* 3 Comp Laws 1915, and an involuntary proceeding by a judgment creditor under § 13583, 3 Comp Laws 1915. To these should possibly be added the provisions of part I, chapter 4, subdivision 2 of Act No. 84, Pub Acts 1921 (Comp Laws Supp 1922, § 9053[34-39]). This contention cannot be sustained. It entirely overlooks the inherent power of a court of equity. The jurisdiction of the English courts of chancery to appoint receivers is very old. 1 Clark on Receivers, § 78; *In re Newdigate Colliery, Ltd* (1912), 1 Ch 468. The sections above referred to are not exclusive of the inherent power of the courts of chancery, and the legislature instead of attempting to confine such power to cases coming within the statutes above noted has by § 12302, 3 Comp Laws 1915, expressly confirmed the broad powers which are inherent in chancery courts and has expressly enumerated among their powers the power to appoint a receiver. This court has in numerous cases recognized that the power to appoint a receiver rests in our chancery courts, among them see: *Ralph v Saginaw [sic, Shiawassee] Circuit Judge,* 100 Mich 164 [58 NW 837 (1894)]; *Corliss v Clinton Circuit Judge,* 212 Mich 476 [180 NW 478 (1920)]; *National Bank of Commerce v Corliss,* 217 Mich 435 [186 NW 717 (1922)]." *Grand Rapids Trust Co v Carpenter, supra,* 493-494.

The statute last referred to in the above quotation, 1915 CL 12302 is materially similar to its present version, MCL 600.2926; MSA 27A.2926, in that it refers to cases where appointment is "allowed by law."

---

Thus, assuming all the requisites are otherwise established, the circuit court has the authority to appoint a receiver.

For the reasons stated in *Petitpren, supra,* we also find no separation of powers problem. The sheriff's argument that he may be removed from

office only by the Governor or by recall (MCL
168.211, 168.651-168.976, 168.207; MSA 6.1211,
6.1951-6.1976, 6.1207) is inappropriate. Here, the
objective to be accomplished is to bring the jail
into conformity with lawful court orders. The pur-
pose of the receivership order is not to remove the
sheriff from office.

Finally, the sheriff argues that because his office
is mentioned in the state constitution, the circuit
court lacked equitable jurisdiction and is barred
from compelling him to comply with its orders.
Const 1963, art 7, § 4. He has shown us no legal
authority in support of this position, and we find
none.

II

### THE WAYNE CIRCUIT COURT DID NOT ABUSE ITS DISCRETION BY ENTRY OF THE RECEIVERSHIP ORDER IN LIGHT OF THE RECORD IN THIS MATTER.

We move now to a discussion of the decision to
appoint a receiver rather than to use a less intru-
sive means of accomplishing compliance with the
final judgment. Where, as here, the trial court
appoints a receiver to implement its orders, we
review the decision on the basis of whether there
was an abuse of discretion. *McBride v Wayne
Circuit Judge,* 250 Mich 1, 4; 229 NW 493 (1930).
The sheriff has argued at length that the record
reflects no failure on his part to comply with the
final judgment. We specifically reject his reliance
on *Vergote v K mart Corp (After Remand),* 158
Mich App 96; 404 NW2d 711 (1987). Unlike in
*Vergote,* we have no need to make a determina-
tion of noncompliance. The parties have stipulated
that there was noncompliance. Likewise, there was
no need for the trial court to sift through copious
materials to determine the cause. The monitor's

report squarely lays a large portion of the responsibility on the sheriff.

We wish to note that not all the responsibility for noncompliance is the sheriff's. Nor do we feel that fault or blame has any part in this matter per se. The goal of this legal action and the goal of the receivership order is implementation of the inmates' right to a decent and humane jail.

We do not feel called upon to trace the bases of the requirements in the final judgment to constitutional or statutory rights. The sheriff consented to the final judgment and did not appeal from it. He cannot now challenge its requirements, as the law in this case has been settled as among the parties.

We note that a substantial number of the requirements in the final judgment are based on the sheriff's preexisting policies and procedures. Appendix I, the classification system, is based on a series of policies produced on the sheriff's letterhead. Appendix II, governing prisoners' cells unusable due to physical problems such as plumbing (the red tag system), is based on a December 26, 1979, memorandum from sheriff's department Inspector Stover. Appendix III is a position description roster from 1982. Finally, the suicide prevention memoranda of Appendix IV are based on memoranda dating from 1981 and 1984 internal to the sheriff's department. These were not superimposed unattainable ideals. They originated with the sheriff or his predecessor and the staff of the jail.

Before entering into the substance of our discussion of noncompliance, we wish to dispose of one additional point. A substantial portion of the sheriff's rationale for noncompliance is based on the fact the jail was overcrowded. Although the pertinent court order calls for a prison population of approximately 1,550 to 1,600, the jail exceeded

1,700 prisoners at any given moment during the years in question. We acknowledge that it is more difficult to comply with the final judgment if the jail is overcrowded.

The statutory remedy for overcrowding is found in the county jail overcrowding emergency powers act, MCL 801.51-801.64; MSA 28.1748(1)-28.1748(14). That act places the ultimate duty and authority to act to reduce the jail population squarely on the shoulders of the sheriff. We find the overcrowded conditions of the jail to be one serious indicator of the sheriff's disinclination to seek compliance with the final judgment.

The record reveals that conditions in and the operations of the Wayne County Jail are significantly improved from those which existed prior to the commencement of this litigation. By stipulating to the monitor's report, the inmates removed that as a disputed factual issue. However, we have no doubt that the conditions and operations at present do not substantially comply with the stipulated requirements set forth in the final judgment. The sheriff removed that premise as a disputed factual issue (at least as of the time frame addressed in the monitor's report) when he stipulated to the monitor's report.

Questioning before this Court at oral argument provided the opportunity for the sheriff to seek to withdraw his stipulation, but no such request was made. Moreover, the materials submitted by the parties after the monitor's report convince us that the circuit court did not err in finding that the jail continues to be in noncompliance. We will discuss later the propriety of the production of the record in this case. Meanwhile, our review of it leaves us with the firm conclusion that Judge Kaufman has not abused his discretion in reaching his decision.

We cover next the areas of noncompliance in the

sequence used in the receivership order. The finding of noncompliance is supported primarily by the stipulated conclusions of the monitor's report, confirmed by the monitor's subsequent inspections.

### A. ENVIRONMENTAL CONDITIONS

There are ongoing violations of state and local building codes involving substandard problems with lighting, heating, ventilation and plumbing. Temperatures vary between 45 and 80 degrees Fahrenheit. The red tag system, designed to prohibit housing of prisoners in uninhabitable cells, is not being implemented. There are widespread sanitation problems with trash and refuse in cells, food on cell bars and infestation by cockroaches, rodents and other vermin. Showers are not cleaned as often as required, and the walls are covered with mold.

The sheriff has not utilized existing staff and inmate resources to remedy these problems. He has not returned to the circuit court to seek orders for more resources to achieve compliance with the final judgment. He has basically continued the status quo in the jail operation, blaming the Wayne County Executive and the commission for ongoing deficiencies.

### B. MENTAL HEALTH

Psychiatric prisoners are housed under conditions which are counter-therapeutic and degrading. There is a narrow, barred walk outside the row of cells comprising each ward. Almost no activity and virtually no recreational opportunity is provided. Suicide prevention has been successful, though suicide attempts continue, as evidenced by entries in the jail log. The suicide prevention gowns, thick, shift-like garments, are not washed

often enough to meet minimal sanitary standards. Insufficient supplies exist to provide a replacement for prisoners while the gowns are being washed. Consequently the monitors and their consultants observed, even on their follow-up inspection in the fall of 1988, several inmates were left naked in their cells during the gown-washing cycle.

Screening is wholly inadequate. Many inmates are placed in psychiatric wards with no screening at all. Evaluation is often undocumented, and care plans are virtually nonexistent. The psychiatrist sees acute patients on a follow-up basis every six weeks and nonacute patients every twelve weeks. Many charts reflect no follow-up whatsoever. Staff psychologists perform follow-up evaluations roughly once per month. This level of care falls short of the community "free standard" required under the final judgment.

Policies and procedures for psychiatric services are virtually nonexistent. There is no in-service training. Supervision is minimal, and there are no quality control mechanisms.

Again, the sheriff has taken no action to remedy these deficiencies to any substantial degree. He continues merely to lay the blame on lack of resources and inmate overcrowding. This reaction shows insufficient commitment to conforming jail operations to either the letter or the spirit of the final judgment.

### C. MEDICAL CARE

No purpose would be served by prolonged, detailed recitation of the medical care deficiencies in the jail. Again, a serious attempt at providing medical care consistent with the community "free standard" of the final judgment is not present, both as to staffing levels and staffing supervision.

The medical director does not train the staff or evaluate them. Meetings with other jail physicians are rare. Medical histories are not thorough, and records are so badly organized they are virtually unavailable.

### D. CLASSIFICATION

The goals of prisoner classification are to reduce violence, prevent escape and better provide for the treatment and program needs of prisoners. Often classification is delayed when prisoners enter the jail by two to three days for men and ten days for women. Files containing past histories of prisoners undergoing current classification are never utilized. In a sampling of housing and classification decisions, more than half of the prisoners were misclassified or mishoused, or both.

Supervision of classification workers is unsatisfactory, and the level of violence, even if it compares "favorably" to other large jails, is not acceptable. In addition, we share Judge Kaufman's skepticism as to the validity of the number of reported assaults. One hundred and six assaults were reported for the first eleven months of 1988. But during the same period, 525 disciplinary citations were issued for fighting or for other forms of assaultive behavior.

### E. DISCIPLINE

The jail disciplinary procedures do not meet the standards of the final judgment. Sanctions continue to be imposed without a prior hearing. This occurs where there is no strong probability of guilt and where conduct does not pose a serious, immediate and substantial threat to others' safety or to the institution's security. Trivial violations, for

example, being in the ward without a shirt, do not meet the requirements for such sanctions.

The monitor's follow-up visitation and inspection reflected that a new prehearing detention methodology had been adopted. While this was less violative of the final judgment, it did not begin to meet the spirit or letter of the requirement forbidding predetermination detention except in the most serious of circumstances. Instead, it evidenced an intent to avoid compliance and continue jail practices with as little modification as possible.

The final judgment included the following:

> The monitor shall determine whether the orders of the Court, heretofore entered, have been complied with and shall report his findings to the Court.
> The monitor shall determine whether the orders and judgments which the Court may enter in the future are being complied with and shall report his findings to the Court.

The monitor's report and the monitor's subsequent observations as filed with the trial court leave no doubt that noncompliance with the final judgment continues. Robert H. Fraser, one of the sheriff's experts, found the jail complied with eighty-two percent of the mandatory standards for accreditation by the American Correctional Association. Evidently one hundred percent compliance is required for accreditation, but such a measure is not relevant here. What is relevant is compliance with the final judgment.

The sheriff undertook a flurry of compliance activities in the late summer and fall of 1988. We find that Judge Kaufman did not err in determining that these were designed not to assure compliance with the final judgment, but instead were in response to the receivership motion. This conforms

with the deposition testimony of monitors Nathan and Belazis. The monitors concluded, along with their health care expert, Kenneth Faiver, that an increase in funding without management improvement would be unlikely to improve compliance with the final judgment.

This record presents an extreme case and justifies appointment of a receiver. We need not characterize the administration of the jail as marked by intransigence or incompetence. We do find a pervasive attitude on the part of the sheriff that the final judgment was not meant to govern the jail. That attitude is inimical to any real likelihood of success in implementation of the final judgment. We find no abuse of discretion in Judge Kaufman's determination that no less intrusive means will effectuate it. Therefore, we conclude that this record supports the receivership order.

III

THE RECEIVERSHIP WAS A PROPER REMEDY BASED ON THE RECORD.

The remedy of appointment of a receiver, though within a circuit court's discretion, is not one to be casually used. The extreme limitation on this exercise of power is set forth in *Hofmeister v Randall,* 124 Mich App 443, 445; 335 NW2d 65 (1983):

Defendant concedes that the trial court had the discretion to appoint a receiver. Instead, he argues that one should not be appointed unless no less drastic means of enforcing plaintiffs' judgment are available. *Petitpren v Taylor School Dist,* 104 Mich App 283, 295; 304 NW2d 553 (1981), lv den 412 Mich 899 (1982), outlines the principles to be applied in determining whether or not a receiver should be appointed:

> "[T]he appointment of a receiver is a harsh remedy which should only be resorted to in extreme cases. . . . If less intrusive means are available to effectuate the relief granted by the trial court, a receiver should not be used. *People v Israelite House of David*, 246 Mich 606, 618; 225 NW 638 (1929). When other approaches have failed to bring about compliance with a court's orders, whether through intransigence or incompetence, a receivership may then be appropriate."

Much in our review and approval of the factual basis for the receivership presages our holding that Judge Kaufman did not abuse his discretion in appointing a receiver. It concerned and surprised us at oral argument when counsel for the sheriff argued that too few alternatives were used to cause his client to obey the final judgment. It is inconceivable that such a position should prevail.

The final judgment, even had the sheriff not consented to it, was an order of the circuit court. None of its provisions were stayed by this Court. It is indistinguishable from the order which would enter following a mandamus action. There is no reason why the inmates should have had to commence a mandamus proceeding to compel compliance. Moreover, we see no likelihood that mandamus or any other ancillary proceeding would have been more effective than entry of the final judgment itself.

Contempt proceedings were a possible alternative to receivership. Historically, in this case, matters have been remedied following a motion for contempt filed by inmates. At oral argument, we were told of a recent use of contempt for implementation of recreation provisions contained in the final judgment.

However, we do not feel contempt is an appropriate vehicle to remedy the panoply of noncompli-

ance in this case. Thousands of jail operations transpire each day substantially out of compliance with the final judgment. Bringing each of these operations into compliance through a "motion for contempt/settlement" cycle would be inefficient and seemingly endless. The trial court correctly reached the realization that contempt proceedings would never bring full implementation of its orders.

No other lesser measure suggested by the sheriff would have brought compliance. One alternative was to allow operations to continue as before, but to permit the sheriff to expend the jail millage. Judge Kaufman determined that more expenditures by the sheriff would not produce adequate compliance with the final judgment. We find no error in that determination.

The commission submitted an alternative to the receivership order in its brief on appeal. It is based in large part on Wayne County Commission Resolution 89-194 of April 11, 1989, and was never presented to Judge Kaufman. We have no evaluation or ruling by him as to its feasibility or its efficacy. This Court normally does not pass upon questions not submitted to the trial court. *Oakland Co v Detroit,* 81 Mich App 308, 313; 265 NW2d 130 (1978), lv den 403 Mich 810 (1978). We see no reason in this case to depart from our usual practice.[2]

The receivership remedy is far from the most intrusive action Judge Kaufman might have taken. He could have appointed the monitor, Vincent Nathan. He could have chosen a person completely new to this litigation. He could have taken

---

[2] By rejecting this ground for appeal, we do not wish to be understood as expressing any opinion on the wisdom or legality of the commission's proposal. Our opinion is without prejudice to the commission's ability to present its plan to Judge Kaufman or the parties in this case.

a different approach and closed the jail until the final judgment was fully implemented.

Quarterly reports to the trial court are required by the receivership order. Due to that provision, whenever compliance is achieved, the trial court will be made aware of it promptly. The court will retain the flexibility immediately to order an end to the receivership when the need for it expires. Indeed, this assurance is contained in the receivership order. Judge Kaufman notes that the receivership will last only so long as necessary to effectuate the court's orders, citing *Turner v Goolsby,* 255 F Supp 724, 734 (SD Ga, 1966).

## IV

### THE SHERIFF'S CLAIMS THAT THE RECORD WAS DEFICIENTLY PRODUCED ARE WITHOUT MERIT.

The sheriff does not cite any authority in support of his arguments on this issue. He makes the bare assertion that his constitutional rights were violated by the procedures followed by Judge Kaufman in reaching his factual determination about the status of jail operations. The sheriff's consent to the earlier-quoted provisions of the final judgment, pursuant to which the monitor is to determine compliance with the final judgment, has never been withdrawn. The fact that numerous provisions of the final judgment have not been complied with is not at issue. What the sheriff most seriously contests is Judge Kaufman's decision to appoint a receiver.

Given that the sheriff agreed to the monitor's report and final judgment, only a total commitment to implementation of the final judgment would have sufficed to forestall a receivership order. The monitor's observations made after reinspecting the jail supported the court's conclusion

that, in effect, the jail continued to be operated with nominal efforts at improvement. Only the threat of the receivership order appears to have spurred improvements. No comprehensive request to the court for increased resources or funding was presented in timely fashion. In fact, documented diversion of jail staff is acknowledged by the sheriff, at least as to three sergeants budgeted as jail staff but assigned to park patrol.

The sheriff has called to our attention no outstanding authority mandating a further hearing prior to imposition of a receivership. In *Petitpren, supra,* 104 Mich App 297, the Court indicated that there are times when a hearing is necessary. However, federal authorities have held that when facts warrant appointment of a receiver a plenary evidentiary hearing is not mandatory. *United States v Ianniello,* 824 F2d 203 (CA 2, 1987); *Bookout v Atlas Financial Corp,* 395 F Supp 1338 (ND Ga, 1974), aff'd 514 F2d 757 (CA 5, 1975), see also 12 Wright & Miller, Federal Practice & Procedure: Civil, § 2983, p 25. The monitor's report, largely confirmed by the monitor's reinspections, appears to us to provide fully adequate facts to support entry of the receivership order in this case without a hearing.

V

THE WAYNE CIRCUIT COURT DID NOT ERR IN
SELECTING THE WAYNE COUNTY EXECUTIVE AS THE
RECEIVER.

There is little doubt, after relying on the sheriff's own argument, that the inmates' petition for appointment of a receiver established a basis for the judge's order. Based on our review and observations appearing throughout this opinion, we find that the wisdom of the selection of the Wayne

County Executive is well supported. There was no abuse of discretion by Judge Kaufman. As previously discussed, Edward McNamara will perform his receivership duties as an officer of the court, not as Wayne County Executive. His previous actions which arguably led to or exacerbated noncompliance with the final judgment were taken in his role as Wayne County Executive. The receivership order leaves no doubt that noncompliance on his part in the future will not be tolerated.

## VI

### THE REFUSAL TO DISQUALIFY EITHER JUDGE KAUFMAN OR THE ENTIRE WAYNE CIRCUIT COURT BENCH WAS NOT ERRONEOUS.

The sheriff's arguments in support of his claims that both Judge Kaufman and the entire Wayne Circuit Court bench should have been disqualified are not meritorious. An actual showing of prejudice is required before a trial judge will be disqualified. *Elsasser v American Motors Corp,* 81 Mich App 379, 388-389; 265 NW2d 339 (1978). The argument that Judge Kaufman demonstrated bias and prejudice by suggesting the terms of a possible settlement to the parties is not sound. The trial court is empowered to discuss settlement and to give the parties an honest assessment of the ultimate resolution of a case. *Backowski v Solecki,* 112 Mich App 401, 412; 316 NW2d 434 (1982).

The allegation that Judge Kaufman had prejudged the receivership issue is not supported on the facts. In briefs filed in his prior interlocutory appeals, the sheriff claimed the judge had already made up his mind to appoint Vincent Nathan as the receiver. He was mistaken. His belief that Judge Kaufman's decision to dispense with oral argument evidenced bias and prejudice is similarly

inaccurate. The court's ruling was within its discretion under MCR 2.119(E)(3).

The sheriff claims that Judge Kaufman imposed unrealistically truncated time constraints on the parties for filing of materials. The timetable set by the judge, in light of the stipulated record before him, does not seem unreasonable. Moreover, the sheriff has pointed to no significant information he wished to bring before Judge Kaufman which he was not able to present because of time constraints. Indeed, in response to the Supreme Court's order of March 21, 1989, this Court too required foreshortened submission schedules. None of the parties here or in the trial court has demonstrated an incapacity to submit copious arguments and materials on time.

The sheriff argues he was harmed by decisions of Judge Kaufman which were based upon unfounded negative views. Any negative views which the judge formed as to the sheriff's performance of his duties appear to us to have been justified. The judge reviewed a staggering quantity of material in the course of this litigation. He had significant experience dealing with the parties. He had a very adequate basis on which to evaluate them, and it is appropriate that he should have used it in making his rulings. *Perez, supra,* pp 740-741.

Finally, the sheriff claims there were improper ex parte communications in this matter. The Wayne County Executive made a sufficient response to these claims. During the course of this litigation, meetings were held to address problems of jail overcrowding. There is no support for the suggestion that any other topics were presented.

In short, the record before Judge Kaufman fully supported his decision. The sheriff suggested no basis for a finding by this Court of an abuse of

discretion in the trial judge's handling of the motion to disqualify himself.

As to the motion to disqualify the entire Wayne Circuit Court bench, a claim of financial conflict has been raised. We believe that the potential for financial conflict was obvious in this cause from the very beginning. Delay in raising it in a disqualification motion until an unpopular order was entered makes it suspect and untimely. It falls outside the fourteen-day standard of MCR 2.003(C)(1). Moreover, as the Supreme Court held in *Detroit Bd of Ed v Getz,* 321 Mich 676, 678; 33 NW2d 113 (1948):

> The interest which will thus disqualify a judge must be such an interest in the subject matter that he will be directly affected through pecuniary or property gain or loss. *In re Petition of Farber,* 260 Mich 652 [245 NW 793 (1932)]. We have held that the fact that a judge was receiving a salary from a municipality as such judge does not necessarily disqualify him from sitting in an action against said city. *Prawdzik v City of Grand Rapids,* 313 Mich 376 [21 NW2d 168; 165 ALR 1165 (1946)].
>
> "The fact that a judge receives a portion of his salary from a county which is a defendant and cross-complainant in an action before him does not create such a personal interest as would disqualify him from presiding at the trial or from ruling on a motion for new trial, where no matter of public interest or public policy which would work such a disqualification is shown." *Priddel v Shankie* (syllabus), 69 Cal App 2d 319 (159 P2d 438 [1945]).

Further, the Supreme Court authority cited by the sheriff in support of his disqualification argument consists of two short orders in the back of the official published Michigan Reports. We agree with Judge BEASLEY, dissenting in *Fazzalare v Desa Industries, Inc,* 135 Mich App 1, 15-16; 351

NW2d 886 (1984), that such orders are not of a substance to represent reasoned authority requiring stare decisis effect.

### VII

#### THE MOTION FOR PUNITIVE DAMAGES SOUGHT UNDER MCR 7.216(c) SHOULD BE DENIED.

The inmates have filed a motion for damages, claiming this appeal amounts to a vexatious proceeding for purposes of MCR 7.216(C). We have not found merit in the sheriff's claims of error. However we find they were not frivolous. The sheriff raised significant legal issues, some of constitutional magnitude. This is not a case calling for the extraordinary relief of an award of punitive damages. Cf., *Detroit Automobile Inter-Ins Exchange v Ayvazian*, 62 Mich App 94, 102-103; 233 NW2d 200 (1975).

#### CONCLUSION

We have rejected all of the sheriff's challenges, those questioning the integrity of the proceedings leading to the receivership order and those questioning the basis for entry of the order. In so doing, we again note that the operation of the Wayne County Jail and the conditions there are not static, but fluid. The appointment of the Wayne County Executive as receiver is nominally for one year. The receivership could be terminated earlier.

We fully anticipate that the trial court will not extend the extraordinary remedy beyond the period absolutely necessary for obtaining compliance with the final judgment. *Turner, supra.* The cooperation of all interested parties and the prompt

filing and evaluation of quarterly reports in accordance with the receivership order should facilitate this goal.

Of course, all parties retain their appellate remedies. However, it is highly desirable that this litigation, already too long protracted, conclude and secure for the inmates the relief to which they are entitled. Cf., *Inmates I, 391* Mich 369.

Affirmed.