*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF STERLING HEIGHTS,

Plaintiff-Appellant,

v

MACOMB INTERCEPTOR DRAIN DRAINAGE
DISTRICT, COUNTY OF MACOMB, MACOMB
COUNTY WASTEWATER DISPOSAL
DISTRICT, CANDICE S. MILLER, BRIAN
SANTO, ROB MIJAC, ANTHONY
MARROCCO, and WILLIAM MISTEROVICH,

Defendants-Appellees.

UNPUBLISHED
October 1, 2019

No. 342870
Macomb Circuit Court
LC No. 2017-000052-AS

Before: GADOLA, P.J., and SERVITTO and REDFORD, JJ.

PER CURIAM.

Plaintiff, the City of Sterling Heights ("Sterling Heights"), appeals as of right the trial court order dismissing its complaint. We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion. Specifically, we affirm the trial court's dismissal of plaintiff's claims for mandamus and for superintending control, and reverse the trial court's finding that the Macomb Interceptor Drain Drainage District was not a Chapter 20 drainage district and its dismissal of plaintiff's claims under the 10-day limitations period set forth in MCL 280.161. We further find as follows: (1) the two factual findings made by the trial court and challenged by plaintiff on appeal were not erroneous, but one of them was legally irrelevant; (2) plaintiff did not have standing to pursue Count I, alleging waste, Count III, alleging breach of contract on behalf of the MIDD defendants, Count IV, breach of fiduciary duties by Marrocco and Misterovich, to the extent that this claim seeks relief for breach of fiduciary duties owed to the MIDD defendants, and Count VII, Gross Negligence against Marrocco and Misterovich, to the extent that this claim arises from Marrocco's and Misterovich's alleged wrongs against MIDD as derivative claims on MIDD's behalf; (3) plaintiff's claim of negligence/gross negligence as to Marrocco and Misterovich is also precluded due to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*; and, (4) the MIDD defendants' choice of an authorized apportionment of costs over the uncertainty and delay of litigation does

-1-

not rise to the level warranting appointment of a receiver. Plaintiff's remaining claims depend on factual analysis of the evidence and are remanded to the trial court for further proceedings.

## I. FACTS

The Macomb Interceptor Drain Drainage District (MIDD) was created on June 15, 2010, pursuant to Chapter 20 of the Michigan Drain Code, MCL 280.461 to 280.499, for the purpose of operating and maintaining a sewer interceptor (the Macomb Interceptor) that it intended to and later did purchase in September of 2010. MIDD is governed by a drainage board which, at the time relevant to this matter, included the following defendants: Public Works Commissioner Candice Miller, former Public Works Commissioner Anthony Marrocco, Director of the Macomb County Department of Roads Brian Santo, and Macomb County Commissioner Rob Mijac. The Macomb Interceptor serves 11 municipalities, including Sterling Heights.

On September 22, 2010, MIDD contracted with the Macomb County Wastewater Disposal District ("Wastewater District"), appointing the Wastewater District as its agent for purposes of operation, maintenance, administration, and making improvements to the Macomb Interceptor. A portion of the Macomb Interceptor collapsed on December 24, 2016, causing a large sinkhole and significant damage. MIDD apportioned the emergency repair costs for the Macomb Interceptor among the 11 municipalities served by I, per MCL 280.469 and MCL 280.478, via an "order of apportionment."

Sterling Heights filed a complaint against MIDD, the named members of the drainage board, Macomb County, the Wastewater District, and former Deputy Public Works Commissioner William Misterovich, in May of 2017. Sterling Heights alleged that the order of apportionment was not supported by competent, material, and substantial evidence because the failure of the Macomb Interceptor was the direct result of the Wastewater District's failure to inspect, maintain, and repair the Macomb Interceptor. Sterling Heights further alleged that the repair costs were only incurred as a result of the improper conduct of the drainage board, several of whose members acted in dual roles as Macomb County officials. According to Sterling Heights, these dual roles created a conflict of interest that prevents MIDD from pursuing litigation against Macomb County, the Wastewater District, Marrocco, and Misterovich for damages arising from the Wastewater District's failure to fulfill its duties under the September 2010 agreements. Sterling Heights contends that the apportionment of costs of the Macomb Interceptor failure was, therefore, not a "necessary expense" to be assessed under MCL 280.478 against the 11 municipalities served by the Macomb Interceptor. Sterling Heights thus sought an order of superintending control to set aside the order of apportionment and mandamus relief requiring MIDD to take action against the Wastewater District.

MIDD immediately moved for dismissal of the claim for superintending control. The trial court granted the motion, finding that the mandamus claim sought essentially the same relief sought in the claim for superintending control (i.e., if the Wastewater District is found to be contractually, or otherwise, liable for the Macomb Interceptor's collapse repairs, it could possibly lead to the elimination of future assessment payments to the extent of the Wastewater District's liability), such that another adequate remedy exists.

Sterling Heights thereafter, by leave of the trial court, filed an amended complaint alleging: (1) waste of assets against MIDD, (2) breach of fiduciary duties against Miller, Santo, and Mijac, (3) breach of the 2010 contracts against Macomb County, (4) breach of fiduciary duties owed to MIDD/gross negligence against Marrocco and Misterovich, (5) refund against Macomb County, (6) unjust enrichment against Macomb County, (7) gross negligence against Marrocco and Misterovich, (8) superintending control to set aside the apportionment, and (9) mandamus requiring MIDD to take action against the Wastewater District, Macomb County, Marrocco, and Misterovich. MIDD, Miller, Santo, and Mijac moved for summary disposition of the amended complaint pursuant to MCR 2.116(C)(5) and (8), and Macomb County, the Wastewater District, Marrocco, and Misterovich filed a separate motion for summary disposition pursuant to MCR 2.116(C)(5), (7), (8) and (10).

In a February 2018 opinion and order, the trial court granted both motions, dismissing Sterling Heights' complaint with prejudice. The trial court raised the issue of the timeliness of the complaint sua sponte, opining that because the Macomb Interceptor does not serve a singular city, the Chapter 20 provision of the Drain Code (MCL 280.461 *et seq*.) relating to judicial review of the apportionment order does not apply. Instead, review is to be under MCL 280.161, which provides for certiorari review only within 10 days of the challenged order. The trial court found that, because the order of apportionment was filed on April 19, 2017, and Sterling Heights did not file its action until May 8, 2017, MCL 280.161 precluded Sterling Heights from maintaining its action against MIDD, Miller, Santo, and Mijac. The trial court further found that the record was devoid of any evidence suggesting that Macomb County, the Wastewater District, Marrocco, or Misterovich misrepresented the condition of the Macomb Interceptor to Sterling Heights, or that Macomb County fraudulently or unjustly collected operating or maintenance costs from Sterling Heights. The trial court stated, "[c]onsequently, MCL 280.161 also precludes Sterling Heights from maintaining this action against Macomb County, [the Wastewater District], Marrocco, and Misterovich."

This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo." *Trentadue v Buckler Lawn Sprinkler*, 479 Mich 378, 386; 738 NW2d 664 (2007). "In the absence of disputed facts . . . whether a cause of action is barred by a statute of limitations" is also reviewed de novo. *Id.* "A motion for summary disposition pursuant to MCR 2.116(C)(10) tests the factual sufficiency of the complaint." *Stock Bldg Supply, LLC v Crosswinds Communities*, 317 Mich App 189, 198; 893 NW2d 165 (2016) (citation and quotation marks omitted). "In evaluating a motion for summary disposition brought under this subsection, a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties, MCR 2.116(G)(5), in the light most favorable to the party opposing the motion." *Stock Bldg Supply*, 317 Mich App at 198 (citation and quotation marks omitted). A "mere promise" to produce evidence at trial is insufficient to establish a genuine issue of fact precluding summary disposition. *Id*. at 198-199. Questions of statutory interpretation are also reviewed de novo. *Signature Villas, LLC v City of Ann Arbor*, 269 Mich App 694, 699; 714 NW2d 392 (2006).

III. FACTUAL FINDINGS

Plaintiff contends that the trial court made two preliminary factual findings in its February 2018 opinion which were not supported by the evidence, were unnecessary to its legal analysis, were not raised by defendants, and were made without plaintiff having an opportunity to respond. We agree, in part.

In its opinion and order, the trial court stated:

As a preliminary matter, the record is devoid of any evidence suggesting Macomb County, MCWDD, Marrocco and Misterovich misrepresented the condition of the MIDD to Sterling Heights. Moreover, the mere fact that Macomb County, as the disclosed agent of MIDD, previously invoiced Sterling Heights for MCWDD operating and maintenance costs does not establish—given the lack of breakdown of those costs and any evidence the costs are inflated or mischarged—that Macomb County fraudulently or unjustly collected either operating or maintenance costs.

The two factual findings plaintiff challenges are that there was no evidence that Macomb County, the Wastewater District, Marrocco, and Misterovich (hereafter the Macomb defendants) misrepresented the condition of the Macomb Interceptor, and that there was no evidence that invoices contained fraudulent charges.

The Macomb defendants stated in their summary disposition brief that the Wastewater District kept the member communities informed of the status of drain conditions, and attached 2015 documentation showing that Marrocco advised plaintiff's city manager of a necessary critical upgrade. The Macomb defendants also presented a detailed account of repairs that were made from 2010 through 2016, as well as documentation concerning the application for grants to fund an extensive inspection of the Macomb Interceptor, and the Wastewater District's annual meetings attended by plaintiff's representative, at which the municipalities received detailed information about the drain bills. Plaintiff, on the other hand, contended that defendants failed to perform any inspections from February 20, 2013, until the date of the collapse. Accordingly, the trial court was properly responding to an issue the parties had placed before it. And while the trial court did not necessarily err by stating that the record was "devoid of any evidence suggesting [the Macomb defendants] misrepresented the condition of the MIDD" to plaintiff, this statement was legally irrelevant because plaintiff did not allege that any defendant concealed the condition of the sewer interceptor or that defendants' claimed actions in inspecting, maintaining, and repairing the Macomb Interceptor were not actually performed.

With respect to plaintiff's allegations of fraudulent billing, the Macomb defendants stated that local communities are billed only for "reimbursement of actual expenses and for a reserve fund which was detailed in the reports sent to the communities." They provided affidavits and documentary evidence to support their position. Plaintiff stated that Macomb County overcharged it by improperly billing for services that were not rendered, or improperly passing charges to plaintiff, but did not attempt to identify which items or portions of items on the county invoices were fraudulently based on services not performed. Because plaintiff did not identify

with specificity which bills were fraudulent, on the record before it, the trial court did not err by stating that there was no evidence of fraudulent billing.

## IV.     CHAPTER 20 DRAINAGE DISTRICT

Sterling Heights argues that the parties all agree that MIDD is a Chapter 20 drainage district, exclusively governed by the provisions of Chapter 20, such that the 10-day limitations period in MCL 280.161 does not apply. The relevant limitations period is instead the 20-day limitations period in Chapter 20, MCL 280.483, thus rendering its complaint timely filed. Notably, MIDD, Miller, Santo, and Mijac (hereafter the Macomb defendants) concede that the trial court erred by not regarding MIDD as a Chapter 20 drainage district. However, the Macomb defendants contend that summary disposition in their favor with respect to Sterling Height's claim under MCL 280.483 was, nonetheless, appropriate because MIDD's apportionment decision was supported by competent, material, and substantial evidence. The Macomb defendants further contend that Sterling Heights' eight remaining claims are untimely under the 20-day time limit because they are claims at law and equity seeking refunds of past drain assessments. Macomb County, the Wastewater District, Marrocco, and Misterovich (hereafter the MIDD defendants) concur with the Macomb defendants' position.

Chapter 20 of the Drain Code, MCL 280.461 to MCL 280.499, applies to intracounty drains.[1] The Drain Code specifically defines a "county drain" in Chapter 20 as "any drain, irrespective of size, carrying drainage water or sewage or both originating in 1 county . . . ." MCL 280.461(d). This definition applies to the phrase "county drain" whenever used in Chapter 20, "except when otherwise indicated by the context." MCL 280.461.

The preliminary sections of Chapter 20 address the initial establishment and construction of county drains, but even after initial completion, the drainage board remains "responsible for the operation and maintenance of the drain." MCL 280.478(1). MCL 280.478(2) further provides:

> Any necessary expenses incurred in administration and in the operation and maintenance of the drain and not covered by contract shall be paid by the several public corporations assessed for the cost of the drain. The assessments shall be in the same proportion as the cost of the drain was assessed unless the drainage board establishes a different proportion for the assessments after notice and hearing as provided in section 469.

Thus, any assessments for necessary expenses are to be apportioned among the municipalities that were assessed for the cost of the drain, after notice and hearing provided in MCL 280.469. MCL 280.469, in turn, provides the procedure in which a Chapter 20 drainage board publishes notice of a hearing to hear objections to tentative apportionments of costs for construction of a drain. MCL 280.469 states, in pertinent part:

---

[1] Drains within the boundary of a county.

> After the tentative apportionments of cost have been made, the drainage board shall set a time, date, and place it will meet and hear objections to the apportionments. . . . After the hearing, the drainage board may confirm the apportionments as tentatively made, or if it considers the apportionments to be inequitable, it shall readjust the apportionments. . . . After confirmation, the drainage board shall issue its order setting forth the several apportionments as confirmed. The order shall be known as the final order of apportionment.

The above is therefore the procedure employed when necessary expenses for the operation and maintenance of the drain are assessed under MCL 280.478(2). There is no question that, consistent with the above, a final order was issued for the apportionment of the expenses associated with the Macomb Interceptor collapse.

The limitations period for challenges to drain-expense apportionment under Chapter 20 is set forth in MCL 280.483, which provides:

> Neither the final order of determination nor the final order of apportionment shall be subject to attack in any court, except by proceedings in certiorari brought within 20 days after the filing of such order in the office of the chairman of the board issuing the same. If no such proceeding shall be brought within the time above prescribed, the drain shall be deemed to have been legally established and the legality of the drain and the assessments therefor shall not thereafter be questioned in any suit at law or in equity, either on jurisdictional or nonjurisdictional grounds.

Only then do we reach the section within Chapter 20 relied upon by the trial court in finding that the Macomb Interceptor does not qualify as a Chapter 20 drain. MCL 280.486 states:

> This chapter shall be applicable (1) to any county drain located, or proposed to be located, entirely within the limits of a single city, village or township; (2) to any county drain located in more than 1 city, village or township but which serves or will serve only an area located entirely within the limits of a single city, village or township so that no other city, village or township will be subject to assessment to pay the cost thereof; or (3) to several drains, including drains located, established and constructed by a county drain commissioner or drainage board, by a city, village or township, whether or not the several drains are interconnected, which several drains serve only areas located entirely within the limits of a single city, village or township, if the city, village or township shall consent thereto by resolution adopted by its governing body. In such case any petition required to be filed hereunder shall be sufficient if signed by such city, village or township only.

The trial court apparently believed that the interceptor drain at issue, the Macomb Interceptor, must have *only* served a single city, village, or township, in order for Chapter 20 (and thus the 20-day limitation period set forth in MCL 280.483) to be applicable. The trial court was incorrect.

This Court's primary goal in interpreting statutes is to determine and give effect to the Legislature's intent. *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The most reliable evidence of the Legislature's intent is the language it uses in a statute and, where that language is unambiguous, judicial interpretation is not required or permitted. *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999).

Chapter 20, by its plain language, governs any and all drains originating within a single county. As a drain originating in one county (Macomb), the Macomb Interceptor, owned by MIDD, falls within the definition of a county drain, and is, thus, governed by Chapter 20 (which explicitly addresses intracounty drains). Notably, MCL 280.486 delineates three numbered categories to which Chapter 20 also applies. These three categories are followed by the subordinate clause, "if the city, village or township shall consent thereto by resolution adopted by its governing body." This subordinate clause modifies the three categories by adding that the municipality adopted a resolution providing that the drains will come within the purview of Chapter 20. In other words, this subordinate clause sets a condition that must be met before the independent clauses set forth in (1), (2), and (3) take effect. Thus, this provision essentially provides that the chapter is applicable to any county drain that is located entirely within a single village or city, a county drain serving only a single village or city such that only that city or village would be subject to assessments, or more than one drain if all such drains serve only areas located entirely within the limits of a single city or village, so long as the governing body of the single village or city consents by resolution to fall within Chapter 20.

Moreover, the last sentence of MCL 280.486 indicates that, if a single village or city consents to be governed by Chapter 20, any petition required to be filed under that chapter is "sufficient if signed by such city, village or township only." Generally, petitions under Chapter 20 are to be signed by "2 or more public corporations which will be subject to assessments to pay the cost of the drain." MCL 280.463. However, where only one public corporation (city, village or township) is subject to assessment, that single body may consent to have Chapter 20 apply to it, and, in that case, any petition required to be filed under Chapter 20 "shall be sufficient if signed by such city, village or township only." MCL 280.486, thus, does not, as the trial court seemed to believe, *restrict* the application of Chapter 20 to the three stated categories of drains. Instead, it *expands* Chapter 20 to cover drains in the three stated categories, if the local municipality so consents.

The trial court, therefore, erred by dismissing plaintiff's claims, as agreed by the parties, under the 10-day limitations period set forth in MCL 280.161.

V. STANDING

Defendants argue that this Court should affirm the trial court's summary disposition order, despite the above error, because dismissal was the correct result, although based on the wrong reason. This Court may affirm the trial court when it reaches the correct result for the wrong reason. *Hoffenblum v Hoffenblum*, 308 Mich App 102, 114; 863 NW2d 352 (2014). "Generally, an issue is not properly preserved if it is not raised before, and addressed and decided by, the trial court." *Hines v Volkswagen of America, Inc.*, 265 Mich App 432, 443; 695 NW2d 84 (2005). "However, where the lower court record provides the necessary facts,

appellate consideration of an issue raised before, but not decided by, the trial court is not precluded." *Id*. at 443-444.

The issues of plaintiff's standing to raise derivative claims on MIDD's behalf, and plaintiff's request for appointment of a receiver, are questions of law that do not require in-depth examination of the evidence. We will, therefore, address those two issues first.

Both sets of defendants argued in the trial court that plaintiff has no standing to assert claims against the Macomb defendants for their alleged wrongs against the MIDD defendants. Plaintiff argues that it is legally entitled to assert derivative claims on MIDD's behalf against the Macomb defendants because MIDD will not act on its own due to the board members' conflicts of interest arising from their relationship with Macomb County. "To have standing, a party must have a legally protected interest that is in jeopardy of being adversely affected." *Barclae v Zarb*, 300 Mich App 455, 483; 834 NW2d 100 (2013) (citation and quotation marks omitted). "A plaintiff must have a special injury or right, or substantial interest, that will be detrimentally affected in a manner different from the citizenry at large." *Id*. (citation and quotation marks omitted). "A plaintiff must assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Id*. (citation and quotation marks omitted).

Plaintiff, relying primarily upon *Romulus City Treasurer v Wayne Co Drain Comm'r*, 413 Mich 728; 322 NW2d 152 (1982), argues that Michigan recognizes a common-law right to bring a derivative action that applies to a municipality bringing an action on behalf of a local drain board. In *Romulus Treasurer*, the plaintiffs were a "township and city treasurers, acting in their official capacities, and landowners." The plaintiffs brought suit against the county drain commissioner challenging drain taxes imposed in 1975. *Id*. at 733. The Court summarized the plaintiffs' allegations and claims as follows:

> Plaintiffs allege that defendants have committed a constructive fraud by collecting money for administrative expenses through special assessment procedures. The monies collected through special assessments, plaintiffs contend, are to be placed in the Revolving Drain Fund, and the enumerated purposes of the fund do not include the payment of such expenses of the drain commissioner's office as the yearly services of clerks, stenographers, engineers and the assessing department. The complaint states that 78% of the money received through the special assessments provided for in § 196 of the Drain Code of 1956 has been used for such administrative purposes. The complaint further states that several hundred thousand dollars, which are presently in escrow, were additionally earmarked for these administrative expenses. Plaintiffs contend that these expenses should only be paid out of funds received through general taxation, and that the collection of such money under the guise of the special assessment laws constitutes a constructive fraud. Plaintiff treasurers argue that to release to the county the funds collected and now in escrow would violate the public trusts and the duties of their offices. [*Id*. at 733-734.]

The plaintiffs sought "various forms of relief," including "a declaration of the rights of the treasurer plaintiffs to bring this action and an accounting of the drain commissioner's records as they relate to the assessments in dispute and to the funds used for administrative expenses." They also sought "a preliminary injunction prohibiting the defendants from enforcing the special

assessments and from using the Revolving Drain Fund for administrative expenses, and an order that the monies held in escrow be returned to the landowner plaintiffs." *Id*. at 734. On appeal, the defendants argued that the treasurer plaintiffs lacked standing to bring the action because they had no financial stake in the outcome of the litigation. The treasurers argued that they had standing based on the public trusts and duties of their offices. *Id*. at 739-740. Our Supreme Court concluded:

> If the defendant drain commissioner's actions in the instant situation could be deemed to present extraordinary circumstances, a petition for mandamus to compel the township treasurers to pay the county the funds collected pursuant to these special assessments could have properly been denied. And if mandamus could properly have been denied, we see no good reason to refuse the treasurers the opportunity to challenge in a court of equity the actions that would have excused the performance of their duties. In other words, if the circumstances are such that the treasurers would not have been compelled to perform their duties of paying the county the taxes which they have collected, there is no good reason for precluding them from seeking instructions from a court of equity as to what properly ought to be done with the funds that they hold. The question whether extraordinary circumstances exist seemingly can be determined as well by a court of equity as by this Court in a mandamus action. Thus, we conclude that if extraordinary circumstances exist, a township treasurer has standing to challenge the actions of a county drain commissioner. [*Id*. at 744-745.]

Plaintiff in this case is not in a similar position to the plaintiff treasurers in *Romulus City Treasurer* because plaintiff is not holding funds with an uncertain entitlement. Plaintiff is not alleging that any acts or omissions by any defendants compelled plaintiff to wrongfully collect or receive monies. Plaintiff does not deny MIDD's authority to apportion repair costs among its members. Instead, plaintiff claims that MIDD would better serve itself and its members by obtaining the repair costs through litigation against the Macomb defendants.

Plaintiff also relies upon *Toan v McGinn*, 271 Mich 28; 260 NW 108 (1935), to support its position. In that case the petitioners, taxpayers of Ionia County, filed a petition "for a writ of mandamus to compel the board of supervisors to bring action against three former county officials for the recovery of certain fees paid them during the years 1929 and 1932, inclusive." *Id*. at 29. The Supreme Court stated that "[u]pon the conclusion of the testimony, the learned circuit judge denied petitioners the writ as petitioned for holding that . . . [t]he petitioner having made out a prima facie case against the former county officials, that some action should be brought against said officials by the prosecuting attorney and, if for any reason he could not act, then by some other suitable person." *Id*. at 32. The *Toan* Court concluded that the plaintiffs were not entitled to mandamus because "[n]o specific statute requires the board of supervisors to institute legal proceedings to recover fees from officers." *Id*. at 35.

The *Toan* Court noted that "it appears that the former county officials may have retained fees which properly belong to the county and good business judgment would suggest that proper steps be taken to recover whatever may be due to the county, but the precise question to determine in the case at bar is: Was mandamus the proper action?" *Id*. at 33. The *Toan* Court held:

The applicable rules are clear. To support mandamus, plaintiffs must have a clear legal right to performance of the specific duty sought to be compelled; defendants must have the clear legal duty to perform such act; and it must be a ministerial act, one "where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." [*Id.* at 34 (citation omitted).]

The *Toan* Court concluded that the plaintiffs were not entitled to mandamus because "[n]o specific statute requires the board of supervisors to institute legal proceedings to recover fees from officers." *Id.* at 35. Consequently, "[t]hese are matters of judgment and discretion which the law commits to the board and not to the court." *Id.*

Plaintiff relies on the *Toan* Court's reference to "some other suitable person" bringing some action against the officials, *id.* at 32, as authority for permitting plaintiff to seek recovery from a former official on behalf of a public body that fails to pursue its own rights[2]. However, plaintiff fails to establish that the MIDD was required to bring suit against the Macomb defendants. Instead, it was a matter of judgement and discretion. Only if the MIDD had a duty, with no discretion, to bring suit against the Macomb defendants, and refused to perform that duty, would plaintiff's position be tenable. That, however, is neither alleged nor what occurred. Consequently, plaintiff did not have standing to pursue Count III, alleging breach of contract against the Macomb defendants, on behalf of the MIDD defendants. Count IV, breach of fiduciary duties by Marrocco and Misterovich, is also invalid to the extent that this claim seeks relief for breach of fiduciary duties owed to the MIDD defendants.

## VI. RECEIVER

Plaintiff argues that if it cannot proceed derivatively, it should be permitted to seek the appointment of a receiver over the MIDD. Receivership is a remedy of last resort, and should not be used where another, less drastic remedy exists. *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 530; 730 NW2d 481 (2007). A receiver will not be appointed when there exists an adequate remedy at law. *Id.* While it is true that a receivership over a public body has been approved on prior occasions, plaintiff has failed to plead circumstances warranting the extreme remedy of receivership.

In *Wayne Co Jail Inmates v Wayne Co Chief Executive Officer*, 178 Mich App 634; 444 NW2d 549 (1989), for example, county jail inmates brought an action in 1971 for rectification of "depraved, inhuman and barbaric" conditions in the jail. The Wayne Circuit Court issued orders intended to rectify the condition, including an order for "the appointment of a monitor to investigate and report on the status of defendants' compliance with court orders." *Id.* Over the period from 1974 to 1988, the parties disputed whether defendants complied with the orders. *Id.* at 640-641. In 1988, the circuit court granted the inmates' motion for receivership based on findings that the county sheriff's "mismanagement, or lack of management, has prevented

---

[2] Plaintiff also cites to and relies upon shareholder derivative and taxpayer suits, but fails to cite authority validating its analogy to these types of suits.

substantial compliance." *Id*. at 642. On appeal, this Court held that the circuit court's broad discretion, as granted by Const 1963, art 6, § 13, and MCL 600.601, included the authority to appoint a receiver. *Id*. at 650, citing *Petitpren v Taylor Sch Dist*, 104 Mich App 283, 292-294; 304 NW2d 553 (1981). This Court cautioned that the appointment of a receiver is not a remedy "to be casually used," *id*. at 658, and that such appointment is a harsh remedy to be resorted to only in extreme circumstances, where no other less intrusive means are available to effectuate the relief sought. *Id*. at 659. This Court found the appointment of a receiver appropriate due to the length of noncompliance with the law and the court's orders, and "a pervasive attitude on the part of the sheriff that the final judgment was not meant to govern the jail. That attitude is inimical to any real likelihood of success in implementation of the final judgment." *Id*. at 658.

Here, the MIDD defendants have not engaged in any conduct comparable to the defendants' recalcitrance in *Wayne Co Jail Inmates*, *supra*. Unlike the defendants in that case, the MIDD did not engage in the extreme behavior of refusing or failing to comply with court orders over an appreciable period of time. The MIDD defendants simply exercised their authority to apportion repair costs to the district's members. Plaintiff's complaint is that the MIDD defendants should have sought damages from the Macomb defendants. The MIDD defendants' choice of an authorized apportionment of costs over the uncertainty and delay of litigation does not rise to the level warranting appointment of a receiver.

## VII. PLAINTIFF'S REMAINING CLAIMS

In Count I (Waste), plaintiff states that it is bringing this claim individually on its own behalf and, derivatively, on MIDD's behalf. Although plaintiff attempted to frame this claim as an independent tort claim, in substance it is a reiteration of plaintiff's derivative claims for breach of contract and mandamus. The premise of the claim is that, if MIDD will not pursue its own rights against the Macomb defendants, plaintiff or a receiver should be permitted to pursue MIDD's rights for the benefit of plaintiff and other municipalities served by the Macomb Interceptor. As explained earlier, plaintiff does not have standing to bring claims derivatively on MIDD's behalf.

Count IX, seeking mandamus, is one of the extraordinary writs governed by Subchapter 3.300 of the Michigan Court Rules. MCR 3.301(A)(1)(a). See also *LeRoux v Secretary of State*, 465 Mich 594, 606; 640 NW2d 849 (2002), in which our Supreme Court noted that Const 1963, art 6, § 4 "retains our authority to issue prerogative and remedial writs, such as mandamus." "[A] writ of mandamus is an extraordinary remedy and will only be issued where (1) the party seeking the writ has a clear legal right to performance of the specific duty sought, (2) the defendant has the clear legal duty to perform the act requested, (3) the act is ministerial, and (4) no other remedy exists that might achieve the same result." *Citizens Protecting Michigan's Constitution v Secretary of State*, 280 Mich App 273, 284; 761 NW2d 210 (2008). Essentially, this issue reiterates plaintiff's derivative claim for breach of contract against the Macomb defendants on behalf of MIDD, and reiterates plaintiff's argument for appointment of a receiver to manage MIDD's litigation. Plaintiff fails to demonstrate that the MIDD Board had a "clear legal duty" to bring suit against the Wastewater District. Accordingly, its claim for mandamus was properly dismissed as a matter of law.

In Count V (Refund) and Count VI (Unjust Enrichment), plaintiff asserted that the funds it paid to the Macomb defendants from 2010 to 2016 for plaintiff's share of MIDD's expenses

should be refunded because the invoices fraudulently stated charges for services that were not performed. These claims are essentially identical and are dependent on the evidence. We also find it appropriate for the trial court to consider evidence concerning Count II, breach of fiduciary duties by current MIDD Board members. To the extent that Count VII, Gross Negligence against Marrocco and Misterovich, arises from Marrocco's and Misterovich's alleged wrongs against MIDD, it is precluded because plaintiff cannot bring a derivative claim. Plaintiff's claim of negligence/gross negligence as to these defendants is also precluded due to immunity under the governmental tort liability act (GTLA), MCL 691.1401 *et seq.*[3]

MCL 691.1407(2) provides, in relevant part:

Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency . . . and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:

(a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.

(b) The governmental agency is engaged in the exercise or discharge of a governmental function.

(c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage.

"Gross negligence" is defined by the GTLA as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). "Evidence of ordinary negligence is not enough to establish a material question of fact regarding whether a government employee was grossly negligent." *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 265; 792 NW2d 781 (2010). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Maiden v Rozwood*, 461 Mich 109, 122; 597 NW2d 817 (1999). "The determination whether a governmental employee's conduct constituted gross negligence that proximately caused the complained-of injury under MCL 691.1407 is generally a question of fact, but, if reasonable minds could not differ, a court may grant summary disposition." *Briggs v Oakland Co*, 276 Mich App 369, 374; 742 NW2d 136 (2007). "To be the proximate cause of an injury, the gross negligence must be the one most immediate, efficient,

---

[3] To the extent that this claim pertains to wrongful invoicing, it is based on the same factual premise as plaintiff's claims for refund and unjust enrichment.

and direct cause preceding the injury." *Love v City of Detroit*, 270 Mich App 563, 565; 716 NW2d 604 (2006) (quotation marks and citation omitted).

The Macomb defendants offered evidence of the efforts made by the Wastewater District to maintain the sewer interceptor's operation. Evan Bantios, the engineer in charge of the sewer interceptor, stated in his affidavit that the alleged "2010 inspection report" attached to plaintiff's amended complaint was actually a warranty report for the repairs of the defects noted in the 2006 inspection. Bantios also swore that the Wastewater District conducted a study of hydrogen sulfide gas in 2011, and installed a biofilter centilator system to reduce hydrogen sulfide. The Macomb defendants further presented evidence that the Macomb County Public Works Department applied for SAW grants in 2013, which it received in 2016.[4] This evidence negates plaintiff's claim that Marrocco's and Misterovich's acts or omissions rose to the level of "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). Plaintiff's evidence establishes, at worst, that Marrocco and Misterovich made *inadequate* efforts to maintain the sewer interceptor, but this inadequacy did not rise to the level of gross negligence. Accordingly, Marrocco and Misterovich were entitled to summary disposition of this claim based on governmental immunity.

Lastly, plaintiff asserts that, in its May 2017 opinions and orders, the trial court prematurely dismissed plaintiff's claim for superintending control on the ground that plaintiff's claim for mandamus provided an alternative remedy. The trial court was correct in its ruling, given that "[i]f another adequate remedy is available to the party seeking the order, a complaint for superintending control may not be filed." MCR 3.302(B). And, although this Court found that plaintiff's claim for mandamus is not viable, reinstatement of the claim for superintending control is not merited.

"A superintending control order enforces the superintending control power of a court over lower courts or tribunals." MCR 3.302(A). This is not a remedy available outside the judicial context. A court cannot, as plaintiff asks it to do here, issue a writ of superintending "control" to a *coordinate* branch/unit of government over which it does not have control. Moreover, as was discussed when addressing plaintiff's claim for mandamus, the defendants do not have a clear legal duty to act in the manner plaintiff wishes. This Court cannot conceive of any basis upon which a court could issue a writ of superintending control to achieve the same result. There being no question of material fact that plaintiff cannot succeed on its claim for superintending control, summary disposition on this claim is and would have been appropriate under MCR 2.116(C)(10). Because a trial court's ruling may be upheld on appeal where the right result was reached, albeit for the wrong reason (*Gleason v Michigan Dept of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003)), we affirm the trial court's dismissal of plaintiff's claim for superintending control.

---

[4] Plaintiff relies on Miller's statement at a public meeting that no inspection had been conducted since 2010. This statement, however, is hearsay, because it is an out-of-court statement offered to prove the truth of the matter asserted (MRE 801(c)) under no cognizable exception.

In sum, plaintiff's claims for breach of contract by MIDD, and breach of fiduciary duty by Marrocco and Misterovich toward MIDD, were properly dismissed because these claims belong to MIDD and plaintiff does not have standing to bring a derivative action on MIDD's behalf against the Macomb defendants. Plaintiff's claims for appointment of a receiver and for mandamus were properly dismissed because the MIDD defendants are not obligated to sue the Macomb defendants for breach of contract. Plaintiff's claim for waste was properly dismissed because it is an attempt to reframe the derivative claim as a claim against the MIDD defendants. Plaintiff's claim of gross negligence against Marrocco and Misterovich were also properly dismissed, as was plaintiff's claim for superintending control. This Court, therefore, affirms the trial court's order of summary disposition as it pertains to these claims. Plaintiff's remaining claims depend on factual analysis of the evidence and are remanded to the trial court for further proceedings.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael F. Gadola
/s/ Deborah A. Servitto
/s/ James Robert Redford